In the Matters of AMERICAN NATION-
AL TRUST and Republic National
Trust, Debtors.

John I. BRADSHAW, Jr., Trustee,
Petitioner-Appellee,

v.

C. E. LOVELESS and Joan E. Loveless,
Respondents-Appellants.

No. 17987.

United States Court of Appeals,
Seventh Circuit.

May 27, 1970.

Christopher R. Kirages, Carl D. Overman, David W. Mernitz, Dutton, Kappes & Overman, Indianapolis, Ind., for C. E. Loveless and Joan E. Loveless.

John I. Mayer, J. Kirk Windle, Sp. Counsel, Joel A. Haber, Atty., Chicago Regional Office, S. E. C., Chicago, Ill., Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Sol., Paul Gonson, Asst. Gen. Counsel, S. E. C., Washington, D. C., for S. E. C.

James M. Klineman, Alan I. Klineman, Indianapolis, Ind., for John I. Bradshaw, Jr.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and KERNER, Circuit Judge.

CASTLE, Senior Circuit Judge.

This is an appeal by C. E. Loveless and Joan E. Loveless, the owners of a shopping center in the State of Oregon, from an order entered by the District Court in a proceeding for a Chapter X [1] reorganization of American National Trust and Republic National Trust, debtors. The order, based upon findings of fact and conclusions of law, was entered following a hearing at which the Lovelesses appeared specially, in response to an order to show cause, to contest the summary jurisdiction of the court and to move for dissolution of two restraining orders. The restraining orders had been entered on the verified petitions of the Trustee, appellee herein, and enjoined the Lovelesses from transferring, selling, mortgaging, or in any way affecting the right, title or interest in the shopping center, known as Willamette Plaza, and certain Indianapolis, Indiana, real estate referred to as the 33rd and Meridian Street property. The restraining orders further directed the Lovelesses to show cause why they should not be continued in force and effect until further order of the court. Prior to a hearing on the orders to show cause the Trustee filed a petition asking authority to reject, as executory, an October 31, 1967 contract between the debtors and the Lovelesses relating to the sale and purchase of the Willamette Plaza shopping center. The petition further requested that the Lovelesses be ordered to turn over certain moneys and realty and to indemnify the debtors as to certain of their outstanding liabilities.

The Lovelesses' motion to dissolve the restraining orders and the Trustee's petition to reject the contract for the purchase of the shopping center by the debtors from the Lovelesses were heard and considered together by the District Court. By the order appealed from the court granted the Trustee's petition to reject the purchase contract; directed the Lovelesses to turn over to the Trustee the sum of $50,000 and to reconvey to the Trustee the 33rd and Meridian Street property both of which were found by the court to have been transferred to the Lovelesses by the debtors as security for the debtors' purchase of the shopping center; granted the Lovelesses two months to file a claim for damages incurred as a result of rejection of the pur-

1. Ch. X of the Bankruptcy Act, 11 U.S.C. § 501 et seq.

chase contract; ordered that pending determination of such claim, if any, the Lovelesses indemnify and save the debtors harmless from any and all claims or liabilities arising out of or related to an $80,000 mortgage the Lovelesses had placed on the 33rd and Meridian Street property, an $87,500 note the debtors had given to third parties[2] in satisfaction of a second mortgage on the shopping center property, and a $50,000 note given by the debtors to First Bank Mortgage Company of Seattle, Washington,[3] as part of the consideration for the purchase of a portion of the shopping center property pursuant to a joint venture undertaking by the debtors and the Lovelesses for the development of a shopping center which had preceded the October 31, 1967 contract; and continued the restraining orders in force and effect.

The main contested issues presented on appeal are (1) whether the October 31, 1967 contract was subject to rejection as executory under the provisions of Section 116(1) of Chapter X (11 U.S.C. § 516(1)); and (2) whether the court had summary jurisdiction to make the adjudications it did.

The District Court found that under the October 31, 1967 contract the previous joint venture was converted into one in which the Lovelesses would develop the shopping center and sell it to the debtors upon completion for the sum of $2,250,000, such purchase price to be adjusted upwards or downwards on the basis of an independent appraisal to be obtained and submitted by the Lovelesses.

The contract provides that the debtors convey to the Lovelesses the portion of the shopping center property the debtors were in the process of purchasing from First Bank Mortgage Company of Seattle, and that the shopping center as developed include this portion as well as the portion of the site owned by the Lovelesses. The contract contains the following provisions:

> "c. The Purchaser [debtors] shall be entitled to receive credit against the purchase price for its equity in the property (Parcel No. 2), which equity consists of the $85,000.00 note that it gave to J. Glenn Cougill and Howard I. Hansen of Eugene, Oregon, and the $50,000.00 note it gave to First Bank Mortgage Corporation of Seattle, Washington, and the $50,000.00 that it has heretofore given the Seller [Lovelesses] in connection with the purchase by the Purchaser of a 25% interest in Parcel No. 1 in accordance with the agreement between the Purchaser and Seller dated April 14, 1967. The credit due the Purchaser in connection with the purchase price in accordance with this paragraph is $187,500.00.

> 3. As additional earnest money to guarantee the performance of the Purchaser, the Purchaser shall, simultaneously with the execution of this agreement, give a good and sufficient deed to property owned by Republic National Trust located at the corner of East 33rd Street and North Meridian Street in Indianapolis, Indiana, which property is referred to in this agreement as Parcel No. 3. * * *

> *   *   *   *   *   *

> 6. It is understood that the Seller may mortgage, pledge, hypothecate or otherwise offer as security any of the properties described as Parcels No. 1, 2 [and] 3 * * * herein for the purpose of financing the construction of the improvements to be completed on Parcels 1 and 2, provided, however, that when the Purchaser completes the purchase herein and pays all the purchase price to the Seller, then the title of all properties shall be conveyed to the Purchaser free and clear of any and all encumbrances. * * *"

---

2. J. Glenn Cougill and Howard I. Hansen, who have filed a claim in the reorganization proceeding to recover on said note.

3. A claim has been filed in the reorganization proceeding based on this obligation of the debtors.

The contract provides that "time is of the essence of this agreement" and that the debtors agree to purchase Parcel No. 1 and repurchase Parcel No. 2 from the Lovelesses when the latter have completed the development of Parcel No. 2. In this respect the contract provides:

"b. Upon substantial completion of the construction of the buildings to be constructed on Parcel No. 2 and the completion of the buildings that are now under construction on Parcel No. 1, the Purchaser shall pay the Seller the total amount of the purchase price in cash. The Seller shall notify the Purchaser in writing of the completion date of the construction at least thirty days prior to the said completion date, and the Purchaser shall have sixty days from the date of the Purchaser's notice to place the money required to complete this purchase in escrow. * * *

\* \* \* \* \* \*

5. In the event the Purchaser fails to complete the purchase and pay all the monies required to be paid to the Seller in connection with this agreement, the Seller may declare this agreement to be terminated and may retain title to all three parcels of property and the $50,000.00 deposit heretofore made on Parcel No. 1 as liquidated damages, and the Purchaser shall have no further interest in any of the property and shall have no recourse against the Seller."

As of the dates of the filing of the Chapter X petitions for reorganization of the debtors, February 13 and 26, 1968, the shopping center was still under construction and had not been completed, and no notice of a completion date nor any appraisal had been received by the debtors from the Lovelesses. The petitions were approved on April 26, 1968, and on April 29, 1968, the Trustee was appointed. Under date of August 30, 1968, the Trustee was given notice that the shopping center would be completed on September 30, 1968, and that the purchaser had sixty days from the date of the notice to place the purchase price in escrow. On March 4, 1968, the debtors had been furnished with an independent appraisal dated February 19, 1968, fixing the value of the shopping center when completed as $2,243,000, and thus establishing that sum as the purchase price.

By letters under date of October 18 and 23, 1968, the Lovelesses granted the Trustee an indefinite extension of time to place the purchase price in escrow, the extension being subject to termination on fifteen days notice. On February 25, 1969, the Trustee notified the Lovelesses that the debtors were willing to pay $1,900,000 for the shopping center property, subject to court approval and to obtaining satisfactory financing, and that the Lovelesses would have until noon, March 14, 1969, to reply. On March 14, 1969, the Lovelesses advised the Trustee that his February 25 offer constituted a repudiation of the October 31, 1967 contract, and gave fifteen days notice of the termination of the extension granted the debtors for performance. On March 31, 1969, the Lovelesses by letter to the Trustee declared the contract terminated in accordance with its terms. On June 13, 1969, the Trustee filed his petition asking authority to reject the purchase contract and for the turn-over and indemnification orders.

The appellants contend that the contract was no longer subject to rejection on June 13, 1969, because it had been terminated according to its terms on March 31, 1969, for failure of the debtors to pay the purchase price—that, therefore, there was no contract left in existence with respect to which the court might rule.

Appellants do not question the court's findings that as of the dates of the filings of the reorganization petitions the shopping center was still under construction, no notice of the completion date had been given, and the required independent appraisal had not been furnished, nor do they quarrel with the court's conclusion that the contract was then executory. But appellants point to

their subsequent completion of the construction, the giving of notice thereof, the furnishing of the appraisal, the debtors' failure to make payment at the time required under the contract or within the period of the extension granted, and appellants' declaration of termination of the contract, all of which occurred prior to the filing of the petition to reject, as removing the contract from the ambit of Section 116(1)[4] and thus depriving the court of the power to permit rejection of the contract. We are not persuaded by this argument. To so limit the reach of the court's authority under Section 116 (1) with respect to a contract which was executory at the time of the filing of the Chapter X petition would be out of harmony with the basic purpose of a Chapter X proceeding—the rehabilitation of the debtor corporation and the preservation of its going-concern value. If an executory contract is determined to be detrimental or onerous and thereby might hinder an effective reorganization, its rejection should be authorized. Workman v. Harrison, 10 Cir., 282 F.2d 693, 699. Conversely, if the contract is of benefit to the debtor and facilitates reorganization, assumption is warranted. And, the trustee is entitled to a reasonable time to make a careful and informed evaluation as to the possible burdens and benefits of an executory contract so that contracts favorable to the debtor may be retained and those not in its best interests may be rejected. In this connection it is stated in 6 Collier on Bankruptcy (14th Ed.) 576–580:

"Theoretically, the power to assume or reject an executory contract exists until confirmation of the reorganization plan. But from the standpoint of the other party to the contract, the settled rule—borrowed from equity receivership practice—is that the trustee or debtor in possession has a reasonable time within which to decide whether adoption or rejection is the better course to recommend to the court. Such right is paramount to the other party's right to assert an anticipatory breach because of bankruptcy, or the right to claim a forfeiture, as in a lease, because of nonperformance by the trustee or debtor in possession. The relative test of "reasonableness" depends upon the facts and circumstances of the particular case.

\* \* \* \* \* \*

If the other party to the contract wishes to protect himself, he must be zealous of his rights. The fact that the contract is not rejected after a reasonable time does not mean that the contract is assumed. Assumption or adoption of the contract can only be effected through an express order of the judge."

■■ Moreover, the appellants here took no action to accelerate election by the Trustee to make a recommendation to the court for either assumption or rejection of the contract. They proceeded with their performance under the executory contract at their own risk insofar as its ultimate assumption or rejection was concerned. And, rejection or assumption of an executory contract in a Chapter X proceeding requires judicial action by the judge and not merely administrative action and decision by the trustee. Texas Importing Company v. Banco Popular de Puerto Rico, 5th Cir., 360 F.2d 582, 584.

■ On the facts and circumstances presented by the record in this appeal we perceive no error in the District Court's order insofar as it authorized and directed the Trustee to reject the October 31, 1967 contract. We conclude our consideration of this phase of the appeal by

4. 11 U.S.C. § 516(1): "Upon the approval of a petition, the judge may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon him and the court— (1) permit the rejection of executory contracts of the debtor, except contracts in the public authority, upon notice to the parties to such contracts and to such other parties in interest as the judge may designate; \* \* \*"

affirming that part of the order which authorized and directed the rejection of the contract and granted the Lovelesses a two-month period in which to file their claim, if any, for damages incurred as a result of the rejection, and we turn to consideration of the question of whether the additional adjudications made in the order were a proper exercise of summary jurisdiction.

A basic concept underlying summary jurisdiction is possession of the property—actual or constructive. This principle has been recognized as applicable to Chapter X reorganization courts (In re Muntz TV, 7 Cir., 225 F.2d 493; In re International Leasing Corporation, 6 Cir., 391 F.2d 572; First National Bank in Houston v. Lake, 4 Cir., 199 F.2d 524; Duda v. Sterling Manufacturing Co., 8 Cir., 178 F.2d 428, 433) as well as to ordinary bankruptcy courts (In re Process-Manz Press, Inc., 7 Cir., 369 F.2d 513; In the Matter of Perspectron, Inc., 7 Cir., 422 F.2d 576). And this court further recognized that in a Chapter X proceeding the reach of the constructive possession concept encompasses property of the debtor pledged as collateral security for debts so as to give the reorganization court summary jurisdiction over money or property in the hands of a third party, deposited for the purpose of security. In re Muntz TV, 7 Cir., 229 F.2d 228, 231.

It is equally well settled, however, that the court is without jurisdiction to summarily adjudicate, without the consent of the party in possession, a controversy over property held adversely to the debtor's estate; that mere assertion of an adverse claim does not oust the court of its summary jurisdiction; that a preliminary determination should be made as to whether the claim is real and substantial or merely colorable; that if merely colorable the court may proceed to adjudicate the merits summarily, but if otherwise it must dismiss the summary proceeding; and that a claim may be adverse and substantial even though in fact fraudulent and voidable. In re

Process-Manz Press, Inc., *supra*. And, as observed in Harrison v. Chamberlin, 271 U.S. 191, 195, 46 S.Ct. 467, 70 L.Ed. 897, a claim is substantial if it " 'discloses a contested matter of right, involving some fair doubt and reasonable room for controversy,' * * * in matters either of fact or law; and is not to be held merely colorable unless the preliminary inquiry shows that it is so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense."

In affirming this Court in Cline v. Kaplan, 323 U.S. 97, at 99, 65 S.Ct. 155, at 156, 89 L.Ed. 97, the Supreme Court stated:

"Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court."

In the instant case the Lovelesses appeared specially and are contesting rather than consenting to the exercise of summary jurisdiction over and adjudication of their adverse claim founded on the contract provisions describing the conveyance of the 33rd and Meridian Street property as "earnest money to guarantee the performance of the [debtors]", requiring that it be reconveyed to the debtors when they paid all of the purchase price of the shopping center to the Lovelesses, but authorizing its retention by the Lovelesses (along with the $50,000 which otherwise is to be credited on the purchase price) as liquidated damages in event of the debtors' default in payment of the purchase price. Of course, we do not express any opinion as to the ultimate merits of the adverse claim asserted by the Lovelesses, but we do conclude that the money ordered turned over and the property directed to be reconveyed is in the actual

possession of the Lovelesses [5] and held by them under an adverse claim thereto which is not "plainly without color of merit, and a mere pretense". Accordingly, the reorganization court was without jurisdiction to make the summary adjudications it did ordering the Lovelesses to turn over the sum of $50,000 to the Trustee, directing the reconveyance of the 33rd and Meridian Street property, ordering the Lovelesses to indemnify and save the debtors harmless from claims or liabilities arising out of or related to the $87,500 and the $50,000 promissory notes executed by the debtors or the $80,000 mortgage and mortgage note on the 33rd and Meridian Street property, and continuing the previously issued restraining orders in force and effect.

■ In reaching this conclusion we have considered the contentions made and supporting arguments advanced by both the Trustee and the Securities and Exchange Commission [6] to sustain the District Court's order. In view of the well-settled principles governing the exercise of summary jurisdiction exemplified in the cases to which we have made reference we find the positions taken by the Trustee and the S.E.C., respectively, to be untenable. We do not deem it necessary to extend this opinion to discuss the appellees' contentions in detail. Suffice it to observe that while the Trustee's position is predicated in part on argument that the money and property ordered turned over and reconveyed are security deposits in the nature of collateral security (rather than earnest money subject to retention by the Lovelesses in event of nonpayment of the purchase price, as contended by appellants), analysis of the arguments advanced by both the Trustee and the S.E.C. reveals that they seek to support the District Court's order on the basis that the reorganization court as an incident to its express statutory power to authorize rejection of an executory contract may utilize the court's equitable powers, in a summary manner, in an effort to restore the parties, as nearly as possible under the circumstances, to their positions prior to the contract and to avoid any unjust enrichment at the expense of the debtor's estate, and in so doing may summarily adjudicate any adverse claims of the other party to property in his possession and relegate such party to redress of his claim in the remedy afforded him as a creditor (11 U.S.C. § 602) to assert a claim against the debtor's estate for any injury he incurs as a result of the rejection of the contract. We find nothing in the statute or in the decisions cited by appellees which so expands the concept of summary jurisdiction merely because it is exercised as an incident to contract rejection.

The order appealed from is affirmed insofar as it authorizes the Trustee to reject the contract of October 31, 1967, and fixes a period within which the respondents-appellants, C. E. Loveless and Joan E. Loveless, may file a claim for damages incurred as a result of the rejection of the contract. In all other respects the order is reversed without prejudice, however, to the right of the Trustee to seek relief in any appropriate plenary proceeding.

Costs on appeal are allowed to the respondents-appellants, C. E. Loveless and Joan E. Loveless.

Affirmed in part and reversed in part.

---

5. The debtors had advanced the $50,000 to the Lovelesses in connection with their earlier joint venture, and the 33rd and Meridian Street property had been conveyed to the Lovelesses pursuant to the October 31, 1967 contract and they had placed an $80,000 mortgage on that property for the purpose of securing funds to finance the construction of the shopping center.

6. As a participant in the court below the Commission is a party to this appeal. See: Ashbach v. Kirtley, 8 Cir., 289 F.2d 159, 162.