JAMESON, District Judge.
 

 This is an appeal from an order of the district court affirming a decision of the bankruptcy court allowing the debtor, Whitcomb & Keller Mortgage Co., Inc., Ap-pellee, to reject an executory contract with Data-Link Systems, Inc., Appellant, and classifying Data-Link as a general unsecured creditor in the Whitcomb & Keller bankruptcy proceeding for the sum of $12,-954.63. We affirm.
 

 I.
 
 Factual and Procedural Background
 

 Whitcomb & Keller, a mortgage banker whose business included servicing mortgage accounts for investors, executed an executo-ry contract with Data-Link, whereby, for a fee, Data-Link was to provide computer services to update and maintain Whitcomb & Keller’s customer accounts. The contract provided that upon termination of the contract, Data-Link would return all master files and other occupational data relating to Whitcomb & Keller upon payment in full of any outstanding balance.
 

 On October 27, 1980, Whitcomb & Keller filed for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101
 
 et seq.
 
 The bankruptcy court approved Whitcomb & Keller as a debtor in possession.
 
 [1]
 
 At the
 
 *377
 
 time Whitcomb & Keller filed its bankruptcy petition, it owed Data-Link $12,954.63 for computer services previously rendered. Data-Link’s claim for that amount was listed in the bankruptcy schedule as a general unsecured claim. Data-Link continued providing computer services, and Whitcomb & Keller paid for all services provided during the administration of the estate.
 

 During the course of the bankruptcy, Whitcomb & Keller determined that it should sell its mortgage servicing contract assets. On February 26, 1981, the bankruptcy court found the bids of Milliken Mortgage Company and Unity Savings Association to be the best for the sale of the assets. As the district court found,
 
 [2]
 
 on March 4,1981, Data-Link discontinued computer services to Whitcomb & Keller, paralyzing it, and precipitated the filing of an application for a temporary restraining order and preliminary injunction. Over Data-Link’s objections, the bankruptcy court entered an order enjoining Data-Link from terminating the computer services, and the services were resumed.
 

 On March 5, 1981, Data-Link filed its answer which included a counterclaim requesting the bankruptcy court either (1) to declare that Whitcomb & Keller, by its application requesting the court to enforce the executory contract and by its continued receipt of the benefits of the executory contract, had assumed the executory contract, or (2) to require Whitcomb & Keller to decide whether to assume or reject the ex-ecutory contract within a specified period of time before the confirmation of the plan. After a hearing on March 9,1981, the bankruptcy court took the matter under advisement and continued the restraining order in effect.
 

 On March 12, 1981, Unity Savings informed the bankruptcy court that Data-Link refused to give either Whitcomb & Keller or Unity Savings essential information stored in the master data base, thereby preventing Unity Savings from purchasing the servicing contract assets. Data-Link contended that the restraining order did not require it to provide Unity Savings with test tapes of information stored in the master data base but only to provide computer services to Whitcomb & Keller. Following a hearing on March 16, 1981, the bankruptcy court directed Data-Link to cooperate and turn over test tapes to expedite the sale of Whitcomb & Keller’s mortgage servicing assets. The parties stipulated that any right, lien or other interest Data-Link might have would attach to proceeds of the sale of Whitcomb & Keller’s assets. Whit-comb & Keller paid Data-Link in full for all charges relating to the preparation of the master data base.
 

 On April 8, 1981, the bankruptcy court found that Whitcomb & Keller had not assumed the executory contract. The court found further that Whitcomb & Keller had remained current on its post-petition debts and that Data-Link was adequately protected, in that any right, lien or other interest that it might have would attach to the proceeds of the sale of Whitcomb & Keller’s assets. Accordingly, the bankruptcy court denied Data-Link’s request to require Whit-comb & Keller to assume or reject the exec-utory contract prior to the confirmation of the plan.
 

 Also on April 8,1981, Whitcomb & Keller requested authority to reject the executory contract. Data-Link objected, and the matter was set for trial. On April 24 the court confirmed the second amended plan of reorganization. Data-Link filed a proof of claim on April 30, asserting priority for the pre-petition claim of $12,954.63.
 

 On July 10, 1981, a trial was held in bankruptcy court on Whitcomb & Keller’s request for authority to reject the executo-ry contract. By order dated April 15, 1982, the court found that Whitcomb & Keller had not assumed the executory contract and
 
 *378
 
 that the language of the contract did not give rise to an equitable lien or warehouseman’s lien on the information stored in Data-Link’s computer. Accordingly, the bankruptcy court concluded that (1) Whit-comb & Keller was entitled to reject the executory contract, and (2) Data-Link’s pre-petition debt of $12,954.63 incurred under the executory contract was an unsecured claim. On appeal the district court affirmed the decision of the bankruptcy court.
 

 II.Contentions on Appeal
 

 Data-Link contends that:
 

 (1) neither the debtor in possession nor the bankruptcy court had authority to enforce the executory contract unless the contract was assumed by the debtor;
 

 (2) because of the essential nature of the services provided under the contract, the bankruptcy court should have specified a period of time within which Whitcomb & Keller was required to decide whether to assume or reject the contract;
 

 (3) Whitcomb & Keller continued receiving benefits from the executory contract and should have been required to assume its burdens; and
 

 (4) Whitcomb & Keller’s request for an order prohibiting Data-Link from terminating computer services and the bankruptcy court’s restraining orders constituted an assumption by Whitcomb & Keller of the ex-ecutory contract.
 

 III.Authority to Enforce Executory Contract Pending Acceptance or Rejection
 

 Acceptance and rejection of executo-ry contracts are governed by Section 365 of the Bankruptcy Code. Title 11 U.S.C. § 365(d)(2) provides:
 

 In a case under Chapter 9,11 or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.
 
 [3]
 

 In
 
 In re American National Trust,
 
 426 F.2d 1059, 1064 (7 Cir.1970), this court held that a trustee in a reorganization proceeding “is entitled to a reasonable time to make a careful and informed evaluation as to possible burdens and benefits of an exec-utory contract,” quoting from 6 Collier on Bankruptcy (14th Ed.) 576-80.
 

 The executory contract between Data-Link and Whitcomb & Keller was in effect on October 27, 1980, when Whitcomb & Keller filed its bankruptcy petition. The contract remained in effect until Whitcomb & Keller made its decision to assume or reject the contract. Before Whitcomb & Keller made its decision, however, Data-Link ceased providing essential computer services. Whitcomb & Keller then applied for the restraining order, as it had a right to do. Similarly, the bankruptcy court had the authority to preserve the status quo until Whitcomb & Keller made its decision.
 
 [4]
 
 The district court held that the bankruptcy court did not err in issuing the restraining order. We agree.
 

 IV.Requiring Debtors in Possession to Assume or Reject Executory Contract
 

 Data-Link contends that because of the essential nature of the service it provided under the contract, the bankruptcy court,
 
 *379
 
 pursuant to Section 365 of the Bankruptcy Code, 11 U.S.C. § 365(d)(2), should have specified a period of time within which Whitcomb & Keller was required to decide whether to assume or reject the executory contract. The parties had, of course, stipulated that the computer services were essential and that the information stored in the computer included information essential to the sale of Whitcomb & Keller’s accounts. Data-Link argues that time for further inquiry into the benefits and burdens of the contract was not needed.
 

 Data-Link interprets the purpose of § 365(d) too narrowly. It is not enough that the trustee or debtor in possession recognize that the services provided under the contract are essential. Rather, § 365(d) allows the trustee or debtor in possession a reasonable time within which to determine whether adoption or rejection of the execu-tory contract would be beneficial to an effective reorganization.
 
 In re American National Trust, supra,
 
 426 F.2d at 1064 (interpreting 11 U.S.C. § 516(1) (repealed 1979), predecessor to § 365).
 

 The bankruptcy court addressed this issue in its order of April 8, 1981. After discussing the purpose of allowing the trustee a reasonable time to make its decision, the court noted that Data-Link was adequately protected because (1) Whitcomb & Keller had paid for all services received during the administration of its estate, and (2) the parties had stipulated that any right, lien or other interest that Data-Link might have would attach to the proceeds of the sale of Whitcomb & Keller’s assets. Accordingly, the court exercised its discretion under § 365(d) in denying Data-Link’s request to require Whitcomb & Keller “to assume or reject the contract forthwith.” We find no abuse of the bankruptcy court’s discretion.
 

 V.
 
 Receipt of Benefits and Assumption of Burdens
 

 Data-Link next contends that a finding that Keller assumed the contract is necessary to avoid the inequitable result of allowing Whitcomb & Keller to derive the benefits of the contract without assuming its burdens.
 

 In the first place, it may be noted that general principles governing contractual benefits and burdens do not always apply in the bankruptcy context. The purpose of the Bankruptcy Code is to “suspend the normal operation of rights and obligations between the debtor and his creditors.”
 
 Fontainebleau Hotel Corp. v. Simon,
 
 508 F.2d 1056, 1059 (5 Cir.1975). Moreover, successful reorganization under Chapter 11 depends on relieving the debtor of burdensome contracts and pre-petition debts so that “additional cash flow thus freed is used to meet current operating expenses.” H.R. Rep. No. 595, 95th Cong., 1st Sess. 221 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6181. The post-petition services provided by Data-Link were operating expenses which Whitcomb & Keller paid in full. But merely providing such services did not alter Data-Link’s position as a general unsecured creditor on its
 
 pre-petition
 
 claim.
 
 U.S. Financial, Inc. v. Pacific Telephone & Telegraph,
 
 594 F.2d 1275, 1279 (9 Cir.1979);
 
 In re Kassuba,
 
 396 F.Supp. 324, 326 (N.D.Ill.1975).
 

 The cases upon which appellant relies are factually distinguishable. Here it is undisputed that Whitcomb & Keller paid in full for all services rendered during the administration of the estate, including the preparation of the data base tape. The only alleged breach of the executory contract relates to the indebtedness owed by Whitcomb & Keller when the petition was filed. Data-Link suffered no harm nor prejudice through the continued utilization of its computer services. Rather it presumably earned a profit from the continued use.
 
 [5]
 
 We agree with the district court that
 
 *380
 
 Whitcomb & Keller’s utilization of the computer services during the administration of the estate did not support a finding that Whitcomb & Keller assumed the contract or that Data-Link was entitled to a priority.
 

 VI.
 
 Requirements for Assumption of Executory Contracts
 

 Finally, Data-Link contends that Whitcomb & Keller’s “application for the enforcement of this essential executory contract and the Bankruptcy Court’s mandatory order thereon (that Data-Link must perform) constituted an assumption with Court approval.”
 

 Under § 365(a) the trustee or debtor in possession,
 
 “subject to the court’s approval,
 
 may assume or reject any executory contract....” 11 U.S.C. § 365(a) (emphasis added). Interpreting similar language
 
 [6]
 
 in
 
 In re American National Trust, supra,
 
 426 F.2d at 1064, this court declared: “ ‘Assumption or adoption of the contract can only be effected through an express order of the judge.’ ” (quoting 6 Collier on Bankruptcy 576-80 (14th ed.)). No such order issued in the present case. Neither the bankruptcy court nor Whitcomb & Keller exhibited any intention of assuming the contract when the court enjoined Data-Link’s termination of services.
 
 [7]
 
 We will not infer such intention. Instead, we find the order was directed solely toward maintaining the status quo — a permissible purpose well within the bankruptcy court’s power, as we have noted.
 

 VII.
 
 Conclusion
 

 We find no abuse of the bankruptcy court’s discretion. We agree with the bankruptcy court and the district court that (1) Whitcomb & Keller did not assume the ex-ecutory contract; but rather (2) was entitled to and did reject the contract; and (3) Data-Link’s pre-petition claim of $12,954.63 is an unsecured claim.
 

 Affirmed.
 

 [1]
 

 . A debtor in possession is essentially the trustee in a reorganization proceeding. Under 11 U.S.C. § 1107(a), a debtor in possession has
 
 *377
 
 the rights and powers and performs the functions of a trustee.
 

 [2]
 

 . In a well considered opinion, the district court set forth in detail the factual background and proceedings in the bankruptcy court. We have followed the opinion of the district court in outlining the facts and proceedings.
 

 [3]
 

 . The policy behind § 365(d)(2) was summarized by the bankruptcy court in its April 8, 1981, order as follows:
 

 Since a debtor is in limbo until confirmation of a plan, it is understandably difficult to commit itself to assuming or rejecting a contract much before the time for confirmation of a plan. Thus, the code allows for the debtor to provide for assumption or rejection of the executory contracts in its plan. This procedure insures that the debtor is not in the precarious position of having assumed a contract relying on confirmation of a particular plan, only to find the plan to have been rejected.
 

 [4]
 

 . The Bankruptcy Code provides a sufficient legal basis for a bankruptcy court to issue an injunction or restraining order in appropriate situations. Section 105(a) empowers a bankruptcy court to issue any order that is necessary or appropriate to carry out the provisions of the Code, 11 U.S.C. § 105(a) (1979).
 

 [5]
 

 . As the district court noted, Whitcomb & Keller in effect “assumed the burdens as it received the benefits during the administration of the estate. If Whitcomb & Keller had continued to receive the services of Data-Link during the administration of the estate and not paid for them, the law clearly states that that indebtedness would be entitled to priority status.
 
 *380
 
 See,
 
 e.g., Matter of Steelship Corp.,
 
 576 F.2d 128, 132 (8 Cir.1978). However, that is not the case here.”
 

 [6]
 

 . 11 U.S.C. § 516(1) (repealed 1979), provided: “upon the approval of a petition, the judge may ... (1) permit the rejection of executory contracts of the debtor....”
 

 [7]
 

 . As the district court noted:
 

 The fact that Whitcomb & Keller utilized the computer services of Data-Link during the administration of its Chapter 11 estate and obtained an injunction from the Bankruptcy Court in order to do so does not support a finding that Whitcomb & Keller assumed the contract. Whitcomb & Keller was entitled to a reasonable time to decide whether to assume or reject the contract and the contract remained in effect until it was rejected. The injunction therefore was necessary in order to give Whitcomb & Keller the time needed to make its decision.