In re CONSUMER HEALTH SERVICES
OF AMERICA, INC., Debtor.

Bankruptcy No. 87–00168.

United States Bankruptcy Court,
District of Columbia.

Aug. 5, 1994.

Brian Seeber, Washington, DC, for debtor.

Claire Whitaker, Washington, DC, for U.S. Dept. of Health & Human Services.

Roger Schlossberg, Trustee.

## DECISION RE MOTION OF SECRETARY OF HEALTH AND HUMAN SERVICES RIGHT TO RECOUP

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The Secretary of Health and Human Services ("Secretary") has filed a motion requesting that the court affirm his right to make recoupment under a Health Insurance Benefits Agreement ("Provider Agreement") with the Debtor and in the alternative, if this court deems it necessary, to grant the Secretary relief from the automatic stay to make such recoupment. The Trustee, Roger Schlossberg, has responded on the merits fully opposing the motion.[1] The court heard the parties argue the matter by telephone. At oral argument, the Secretary, through counsel, stated that what the Secretary seeks is a ruling that the Secretary may withhold the sums owed the Debtor. The court has determined to deny such relief.

### FACTS

This contested matter involves Title XVIII of the Social Security Act (42 U.S.C. §§ 1395 through 1395ccc) entitled "Health Insurance

---

1. The Secretary's motion seeks relief in the nature of a declaratory judgment. When a declaratory judgment is sought, an adversary proceeding is required. Although a motion for relief from the automatic stay does not require an adversary proceeding, the mere denial of such a motion as unnecessary (based on a determination that recoupment does not come within the automatic stay) would not grant the Secretary the relief that he seeks: no final appealable order would then be in existence against the Debtor ordering that the Secretary may make recoupment. Thus, technically this matter should have been brought as an adversary proceeding. However, the Trustee has fully responded and not raised any defense that an adversary proceeding was required. In these circumstances, the court will not require the Secretary to file an adversary proceeding.

for Aged and Disabled" and commonly referred to as the Medicare program. As part of its business, the Debtor provided services to Medicare beneficiaries as a home health agency. On October 15, 1976, the Debtor, by its president, executed the Provider Agreement which the Secretary accepted on June 14, 1977.[2] The Agreement merely recites that the Debtor agrees not to charge, except to the extent permitted by § 1866(a)(2) of the Social Security Act (42 U.S.C. § 1395cc(a)(2)) and regulations issued thereunder, any individual or any other person for items and services with respect to which the provider of services is precluded by reason of § 1866(a)(1) (42 U.S.C. § 1395cc(a)(1)) from charging such individual or person and "to return any moneys incorrectly collected from such individual or such person, or to make such other disposition as may be specified in regulations." The Secretary's acceptance of the Agreement established the Debtor's eligibility for payment from the Medicare program which provides for estimated payments to providers (called interim payments) pending final determination of the actual amount that the provider is entitled to based on the reasonable cost of services to beneficiaries. *See* 42 C.F.R. §§ 413.60, 413.64(a), 413.64(b) and 413.64(f)(1). Pursuant to 42 U.S.C. § 1395g(a) the Secretary shall make payment to the provider of the amounts determined due "with necessary adjustments on account of previously made overpayments or underpayments." In 1984, the Secretary through a financial intermediary (Independence Blue Cross) determined that the provider in this case owes the Medicare program the amounts of $15,442.28 and $16,916.00 which represent overpayments for the fiscal years of 1980 and 1981, respectively, or a total of $32,352.28.[3]

This case was commenced as a Chapter 11 case on March 4, 1987. The Debtor continued to provide Medicare services after the filing of the petition and thereafter submitted a number of claims to the financial intermediary for processing. The intermediary expects that these claims after processing will generate approximately $15,000 in Medicare payments owed to the debtor.[4] The Trustee asserts that the Secretary continued to make payment after the petition date of other claims submitted by the Debtor. The case was converted to Chapter 7 on October 21, 1988.

### DISCUSSION

The court addresses three principal issues. First, did the debtor, as a debtor-in-possession exercising the powers of a trustee, assume the contract as an executory contract such that pursuant to the terms of the contract the Secretary may exercise the contractual right to first recover the overpayments? Second, if the contract was not assumed, may the Secretary alternatively make recoupment on the basis of equitable recoupment principles? Third, if the contract was not assumed and the Secretary may not exercise equitable recoupment, is the debtor nevertheless not entitled to recover the payments on the basis urged by the Secretary that without assumption of the contract no contractual right to payment exists? Following principally the reasoning of *In re University Medical Center,* 973 F.2d 1065 (3d Cir.1992), the court answers these questions in favor of the debtor.

### A. ASSUMPTION OF THE CONTRACT

 It is a well established principle that assumption of an executory contract requires

2. The Trustee does not contest that the agreement attached to the Secretary's motion is a copy of the Provider Agreement.

3. The affidavit filed in support of the Secretary's motion was not signed under penalty of perjury nor signed before a notary public or other officer authorized to administer oaths. The Trustee has not challenged the accuracy of the affidavit.

4. The court inquired at oral argument (which was not recorded) whether the claims are all for post-petition services. The Trustee believed that

they were. In any event, to the extent that any of the Debtor's claims are for pre-petition payments they clearly are subject to a right of recoupment (or, at the very least, setoff) and the Trustee did not dispute that the Secretary may properly withhold payment of pre-petition amounts owed the Debtor for application against pre-petition overpayments to the Debtor and to make setoff. In the balance of this decision, the court will assume for purposes of analysis that all of the Debtor's $15,000 claims are for post-petition services.

the debtor to accept its burdens as well as its benefits. *University Medical Center*, 973 F.2d at 1075; *Lee v. Schweiker*, 739 F.2d 870, 876 (3d Cir.1984); *In re Monsour Medical Center*, 8 B.R. 606, 615–16 (Bankr.W.D.Pa. 1981), *aff'd*, 11 B.R. 1014, 1017–18 (W.D.Pa. 1981); *In re Tidewater Memorial Hospital*, 106 B.R. 876, 884 (Bankr.E.D.Va.1989). And as the Trustee acknowledges, the Provider Agreement between the Secretary and Debtor established a right in the Secretary "that payment for services shall be reduced to account for prior overpayments." Trustee's opposition, par. 1. Thus, if the Provider. Agreement is an executory contract which the estate is found to have assumed, the contract would be enforceable upon assumption and the Secretary's withholding of payments would merely be the exercise of a contractual right. Although some courts would label this as contractual recoupment, in reality it is merely an acknowledgment that upon assumption, contract rights can be enforced against the debtor. As the court in *University Medical* stated, upon assumption "there is no question that HHS could withhold [debtor's] post-petition reimbursement in order to recover pre-petition overpayments without violating the automatic stay." *University Medical*, 973 F.2d at 1075. Thus, the court must determine whether the Provider Agreement constitutes an executory contract and, if so, whether it has been assumed by the estate.

### 1. Executory Contract Nature of the Provider Agreement

■ The majority of courts that have addressed the issue of whether the Provider Agreement under the Medicare scheme is an executory contract have answered in the affirmative. *University Medical*, 973 F.2d at 1075 n. 13; *Monsour Medical*, 8 B.R. at 615–16; *In re Advanced Professional Home Health Care, Inc.*, 94 B.R. 95 (E.D.Mich. 1988); *Tidewater Memorial Hospital*, 106 B.R. at 883; *In re Memorial Hospital*, 82 B.R. 478, 481 (W.D.Wisc.1988). *Compare Lee v. Schweiker*, 739 F.2d at 875–76 (distinguishing Medicare scheme from Social Security scheme for purposes of recouping over-

payments of Social Security benefits on the basis that Social Security benefits are statutory entitlements rather than contractual rights; statutory purpose of providing income security to recipients requires rejection of view of the statutory scheme as a "contract").[5]

This court agrees that the required Provider Agreement together with the overall scheme under the Medicare statute and regulations allowing a provider to furnish services, to receive interim estimated payments and to continually adjust future payments according to past overpayments or underpayments constitutes an executory contract. Accordingly, the right to recoupment acknowledged by the trustee is in the nature of a contract right and not a statutory entitlement.

### 2. Assumption or Rejection of the Contract

■ The Trustee argues that neither the Trustee nor the Debtor has moved to assume the contract as provided in 11 U.S.C. § 365 and, therefore, the contractual right to recoupment cannot be enforced against the debtor. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 532, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1983) (creditor cannot enforce contractual rights post-petition until debtor has assumed the contract). This court agrees.

Some courts have held that the post-petition performance by the debtor of an executory contract may amount to an assumption carrying with it the burden of recoupment under the contract. *See In re Yonkers Hamilton Sanitarium*, 22 B.R. 427, 435 (Bankr. S.D.N.Y.1982), *aff'd*, 34 B.R. 385 (S.D.N.Y. 1983); *Advanced Professional*, 94 B.R. at 97; *In re Midwest Service and Supply Co., Inc.*, 44 B.R. 262 (D.Utah 1983); *In re Reda*, 54 B.R. 871, 874, 880 (Bankr.N.D.Ill.1985). However, this court has difficulty accepting that line of cases. Rather, it agrees with those courts requiring court approval for an assumption to be valid. *University Medical Center*, 973 F.2d at 1075–79; *Memorial Hos-*

---

**5.** *But see In re Visiting Nurse Ass'n*, 121 B.R. 114 (Bankr.M.D.Fla.1990) (Secretary's right to re- coup is statutory in nature and exempt from the stay).

*pital,* 82 B.R. at 484 ("[r]ecognition of an exception to the requirement of court approval of assumption of executory contracts nullifies the clear and unambiguous statutory language of sections 362 and 365"). *See also In re Whitcomb & Keller Mortgage Co., Inc.,* 715 F.2d 375, 380 (7th Cir.1983).[6]

There having been no formal court approval of assumption of the contract in this case, the contract was not assumed. And absent assumption, the Secretary cannot enforce its contractual right to recoupment. *Bildisco,* 465 U.S. at 532, 104 S.Ct. at 1199. However, a finding that there is no contractual right to recoupment does not necessarily mean that another basis for recoupment does not lie.

## B. *EQUITABLE DOCTRINE OF RE-COUPMENT*

■ The Secretary may be entitled to recover pre-petition overpayments by withholding the debtor's post-petition reimbursement under the equitable doctrine of recoupment. *See University Medical,* 973 F.2d at 1079 (equitable doctrine of recoupment exists independent of any contractual right to recoupment); *Visiting Nurse Ass'n,* 121 B.R. at 118–19. If the Secretary's acts fall within the scope of the doctrine of equitable recoupment, the withholding of the $15,000 would be proper even though the Provider Agreement was not assumed.

Courts have applied recoupment as a matter of statutory law, in relationships governed by statute, as well as a matter of common law. *Visiting Nurse Ass'n,* 121 B.R. at 118–19. The court believes that the labels of statutory recoupment versus common law recoupment are irrelevant because whatever existing relationship between the debtor and the creditor is at stake, the same principles govern the task of harmonizing

that relationship with the goals of the Bankruptcy Code and deciding whether equitable recoupment ought to be allowed, thereby improving the creditor's position in relation to other creditors. The court follows the approach taken by the Third Circuit in *University Medical,* 973 F.2d at 1079–82, which applied equitable recoupment principles without distinguishing between statutory or common law recoupment. Necessarily, the court focused on the Medicare statute and the regulations thereunder because these governed the parties' relationship, but it applied principles of universal application to either statutory or common law recoupment.

■ Recoupment has been defined as "the setting up of a demand *arising from the same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." *University Medical,* 973 F.2d at 1079 (citing Colliers, § 553.03, at 553–15, 17).[7] In essence, recoupment is "a defense to the debtor's claim against the creditor ...." *Id.; Lee v. Schweiker,* 739 F.2d at 875. Thus, recoupment prevents the debtor from receiving more than that to which it is entitled.

Because the equitable doctrine of recoupment only applies if the respective claims "arise out of the same transaction," the ability of the Secretary to effect a recoupment depends upon whether the overpayments made in 1980 and 1981 were part of the same transaction as the transaction giving rise to the debtor's claims for reimbursement for post-petition services. Addressing facts almost identical to those in the case at bar, the court in *University Medical* determined that there was no basis for finding that these claims were part of a single transaction. 973

---

**6.** Section 365 empowers a trustee or debtor in possession, "subject to court approval," to "assume or reject any executory contract." § 365(a). In a Chapter 11 case, the contract may be assumed any time up to confirmation of the plan. § 365(d)(2). However, at any time after the petition is filed, the creditor may move the court for an order compelling the debtor to assume or reject. § 365(d)(2). Upon assumption, valid pre-petition claims for default (in this case, reimbursement of overpayments) must be cured. § 365(b)(1).

**7.** Recoupment thus differs from setoff which gives the creditor the right "to offset a mutual debt owing by such creditor to the debtor," provided that both debts arose before commencement of the bankruptcy action and are in fact mutual. *In re Davidovich,* 901 F.2d 1533, 1537 (10th Cir.1990). Setoff usually involves claims arising out of different transactions. *Yonkers,* 22 B.R. at 432.

F.2d at 1079–82. In so holding, the court noted:

> ... a mere logical relationship is not enough: the "fact that the same two parties are involved, and that similar subject matter gave rise to both claims, ... does not mean that the two arose from the 'same transaction.'" *Lee*, 739 F.2d at 875. Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of the transaction without also meeting its obligation. Use of this stricter standard for delineating the bounds of a transaction in the context of recoupment is in accord with the principle that this doctrine, as a non-statutory, equitable exception to the automatic stay, should be narrowly construed.

973 F.2d at 1081 (citing *In re B & L Oil Co.*, 782 F.2d 155, 158 (10th Cir.1986)). *See also* H. Buschman, Benefits and Burdens: Post–Petition Performance of Unassumed Executory Contracts, 5 Bankr.Dev.J. 341, 349–58 (1988). The court in *University Medical* found that the relationship established by the Provider Agreement does not support a finding that the relationship between the debtor and the Secretary, albeit ongoing, is a single transaction. The account reconciliation process established by the Medicare Act and regulations provide for an annual audit upon the provider's submission of an annual cost report. 42 C.F.R. §§ 413.20(b), 413.24(f) (1991). In accordance with these regulations, payments for one year are independently determined on an annual basis and are for services distinct from those provided in the other years. This scheme indicates that "reimbursement payments for any one year arise from transactions wholly distinct from reimbursement payments made for subsequent years." *University Medical*, 973 F.2d at 1080. As the court explained, each transaction began with services rendered by the provider to the Medicare patient, includes payment to the provider, and concludes with the Secretary's recovery of any overpayment. *Id.* at 1081–82.

This court agrees with the reasoning in *University Medical* and thus finds that the claims in this case did not arise out of the same transaction. The typical situation in which recoupment can be invoked involves a credit and debt arising out of a transaction for the same goods or services. *See Midwest Services & Supply*, 44 B.R. 262 (D.Utah 1983) (pre-petition progress payments on construction contracts made in excess of value of work performed pre-petition recouped against post-petition work completing those contracts); *Waldschmidt v. CBS*, 14 B.R. 309 (M.D.Tenn.1981) (recording company recouped pre-petition advance payments from royalties it owed artist from actual record sales); *In re Mohawk Ind.*, 82 B.R. 174 (Bankr.D.Mass.1987) (government could recoup pre-petition contract advances against debtor's post-petition contract performance). *But see B & L Oil*, 782 F.2d 155 (creditor could recoup overpayments to debtor for pre-petition shipments of oil against money owed to debtor for post-petition purchases of oil), criticized in *In re University Medical Center v. Sullivan*, 122 B.R. 919, 929 (E.D.Pa.1990), *aff'd*, 973 F.2d 1065 (3d Cir.1992).

The typical recoupment scenario does not exist in this case. The Secretary's claim for overpayment for the years 1980 and 1981 relates to services provided in 1980 and 1981, and those services are not the same services for which the debtor now seeks reimbursement. Furthermore, the Secretary's claim for overpayment would have arisen even if it were contemplated the debtor would never perform any services after 1981: it was not an advance, as in *Waldschmidt*, against future performance by the debtor. Therefore, the debtor's right to payment for post-petition services cannot be said to be integral to the Secretary's claim for overpayment. *See In re Newberry Corp.*, 145 B.R. 998, 1001 (9th Cir. BAP 1992) (debtor's claim would not have arisen had it not been for act of creditor, but act of creditor only occurred as a result of act of debtor). Accordingly, the transaction that gave rise to the Secretary owing the debtor monies cannot be said to be the same transaction that gave rise to Secretary's claim for overpayment.[8]

---

8. The court's analysis in *In re California Canners & Growers*, 62 B.R. 18 (9th Cir. BAP 1986), correctly applies similar reasoning in different context. In that case, the debtor was in the

■ Equitable recoupment should not be applied when there is not a true single transaction but rather only an ongoing relationship. When equitable recoupment is improperly applied in that fashion, it is inequitable and inconsistent with critical policies of the Bankruptcy Code. To do so improperly overrides the debtor-in-possession's freedom to perform on the contract while formulating a decision under 11 U.S.C. § 365 to whether assumption of the contract (and subjecting the estate to "contractual recoupment") is in the best interests of the estate; it unfairly prefers the creditor over other creditors, effectively converting a pre-petition claim that confers no post-petition benefit on the estate into an administrative claim; and it may subject the estate to the additional detriment of the estate's suffering post-petition operation loss if the amount left after recoupment by the creditor is exceeded by the cost of the debtor's post-petition operations. *In re Dartmouth House Nursing Home*, 24 B.R. 256, 261–64 (Bankr.D.Mass.1982), *appeal dismissed*, 30 B.R. 56 (1st Cir. BAP 1983), *aff'd*, 1985 WL 17642 (D.Mass.1985); *Hoffman v. State of Connecticut (In re Willington Convalescent Home, Inc.)*, 39 B.R. 781, 791–92 (Bankr.D.Conn.1984), *rev'd on other grounds*, 72 B.R. 1002 (D.Conn.1987), *aff'd*, 850 F.2d 50 (2d Cir.1988), *aff'd*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989); Buschman, 5 Bankr.Dev.J. at 356–57. The Medicare Act and applicable regulations make clear that the amount due the provider for one year stems from services completely unrelated to those provided in later years. Because the statute provides for the parties' relationship to be divided into a series of annual transactions, equitable recoupment outside the fiscal year is inappropriate and does not lie in this case.

## C. IS THE DEBTOR ENTITLED TO THE REASONABLE VALUE OF THE SERVICES PROVIDED POST–PETITION?

■ Although the Secretary may not withhold the funds under the doctrine of recoupment, the court must address the Secretary's contention that the debtor is not entitled to payment for services performed post-petition. The Secretary urges the court to find that the contract is deemed rejected by operation of 11 U.S.C. § 365(d)(1), which provides that an executory contract in a Chapter 7 case is deemed rejected if the trustee does not assume or reject it within 60 days after the order of relief.[9] The Secretary contends that if the contract is deemed rejected, the debtor is not entitled to any payment for services provided post-petition because no provider agreement is in effect as required by 42 U.S.C. § 1395cc and, therefore, withholding the $15,000 payment would be authorized and not in violation of the automatic stay. There simply would be no act against property of the estate. Alternatively, the Secretary urges that 42 U.S.C. § 1395g(a) mandates that the amount owed is zero because the Secretary is required to make payment adjustment for previous overpayments.

Whether a debtor is entitled to payment for services provided between the filing of the petition and the assumption or rejec-

business of selling goods to the defendant, a distributor, who upon distribution would then submit a bill to the debtor for the cost of making the deliveries. The debtor owed the distributor money for deliveries made by the distributor pre-petition. The distributor, however, owed monies to the debtor for the post-petition sale of goods by the debtor to the distributor. After the filing of the bankruptcy, the distributor sought to recoup against these monies the amount the debtor owed for the pre-petition deliveries. Because separate transactions were involved, the court held that recoupment was inappropriate. It explained:

... the pre-petition debt that the defendant seeks to recover represents the final steps in several single transactions, that is, [defen-dant's] delivery of goods to military installations. The post-petition claims of [the debtor] represent the first steps in a number of separate and distinct transactions. The goods in [the debtor's] post-petition invoices are not the same goods as in [the defendant's] pre-petition invoices.

62 B.R. at 20. *See also Lee v. Schweiker*, 739 F.2d at 876 (payment of social security benefits are separate transactions independently made each month based on the recipient's eligibility at that time).

9. This case was converted to Chapter 7 on October 21, 1988, which constitutes an order of relief pursuant to § 348(a).

tion[10] of the contract is an issue that the Code fails to address and only few courts have attempted to resolve. *See* Buschman, 5 Bankr.Dev.J. at 341–49, 358–60 (discussion of rights of debtor during this period). Analysis of the issue must take account of the Supreme Court's holding in *Bildisco*.

In *Bildisco*, the debtor-in-possession failed post-petition to pay certain contractually mandated fringe benefits and wage increases and to remit dues to its employees' union. The NLRB sued under the National Labor Relations Act ("NLRA"), alleging that these acts constituted an unfair labor practice, namely a unilateral change of the terms of the collective bargaining agreement. *Bildisco*, 465 U.S. at 518–19, 104 S.Ct. at 1192–93. The Third Circuit, however, declined to enforce the NLRB's order to make the contributions and remit the dues. *Id.* at 519, 104 S.Ct. at 1192–93. The Supreme Court affirmed. It reasoned that damages for ultimate rejection of the executory contract are governed by 11 U.S.C. § 502(g), with any services *by the employees* in the pre-rejection period being compensated at their reasonable value. The agreement itself is not enforceable against the debtor on the filing of the bankruptcy case and never is if not assumed and accordingly the debtor-in-possession may unilaterally disregard its terms without that being an unfair labor practice. Accordingly, the debtor-in-possession was not properly the subject of an NLRB enforcement action. That is *Bildisco's* extremely narrow holding.

*Bildisco* does not hold that the contract is not in effect or that the debtor-in-possession may not opt to enforce the creditor's obligations under the contract pending assumption. Such a holding would have been unnecessary and would have been inconsistent with prior caselaw recognizing that an unassumed executory contract continues in effect and remains enforceable by the debtor. *In re Whitcomb & Keller*, 715 F.2d at 380.

Indeed, fundamental bankruptcy policies touched upon in *Bildisco*, with respect to executory contracts, the automatic stay and priorities, warrant allowing the debtor to continue performance post-petition and to be compensated. The debtor's ability to continue to perform post-petition pursuant to executory contracts is in many instances the lifeblood of its reorganization. Therefore, to find that the debtor is not entitled to payment for services provided post-petition would compel the debtor to determine immediately upon filing whether to assume the contract. This result, however, runs counter to § 365(d)(2) which contemplates giving the debtor a reasonable period of time to determine in its business judgment whether to assume or reject the contract. *University Medical*, 973 F.2d at 1078 (Code anticipates providing debtor reasonable time to determine if assumption or rejection is beneficial to effective reorganization); *Whitcomb & Keller*, 715 F.2d at 378; *In re McLean Industries, Inc.*, 96 B.R. 440, 443 (Bankr. S.D.N.Y.1989). *See* D. Bordewieck, "The Post–Petition, Pre–Rejection, Pre–Assumption Status of An Executory Contract," 59 Am.Bankr.L.J. 197, 205 (1985).

Whatever the appropriate rule may be in other contexts, the court agrees with the Third Circuit that when the Bankruptcy Code and the Medicare Act are harmonized, the debtor's rights under the Medicare Act and regulations ought to remain enforceable by the debtor-in-possession in the pre-rejection period, although the debtor-in-possession must still continue to comply with the requirements of the Medicare Act and regulations. *University Medical*, 973 F.2d at 1082–84. *Contra Monsour Medical*, 8 B.R. at 615 (debtor is not entitled to payment under the contract post-petition absent implied or express assumption); *Advanced Professional*, 94 B.R. at 97 (Medicare Act prevents debtor from continuing as a provider absent assumption). In *University Medical*, the court held that the broad principle enunciated in *Bildisco*—that the court should harmonize the policies of two intersecting statutes—governs the relationship between the provider-debtor and the Secretary during this period. Applying this principle, the court concluded that allowing reasonable

---

10. Whether the contract at issue is ultimately rejected is irrelevant for determining whether

services in this period should be compensated.

compensation for the provider's services is a result that "best harmonizes the Medicare Act's goal of providing medical care to the elderly and disabled with the Bankruptcy Code's goal of providing the debtor with a breathing spell from creditors in order to permit the debtor to attempt repayment or reorganization." *University Medical,* 973 F.2d at 1084. *See also In re Dartmouth House Nursing Home,* 24 B.R. at 261 (weighing of policies requires state welfare system's regulations to yield to Bankruptcy Code); *In re Hill,* 19 B.R. 375 (Bankr. N.D.Tex.1982) (internal regulations of U.S. Department of Agriculture do not override bankruptcy policies). *But see Advanced Professional,* 94 B.R. at 97 (nothing in Bankruptcy Code directly overrides Medicare statutory scheme providing for recoupment). While Congress is free to override the general bankruptcy scheme, there is no evidence that Congress intended the Secretary's statutory collection remedy of recoupment to be given a preferred status in comparison to other creditors' collection remedies.

The Secretary's argument that he is forbidden by the Medicare Act to pay for those services in light of the debtor's *pre-petition* obligation for overpayments is unpersuasive. In essence, the Secretary is asserting that enforcement of a Medicare Act provision, 42 U.S.C. § 1395g(a) (calling for payment with necessary adjustments for previous over payments), necessarily outweighs the policies of the Bankruptcy Code.

Section 1395g(a) merely reflects a mechanism for collection of the Secretary's prepetition overpayment. Nothing in the Bankruptcy Code or the Medicare Act suggests that the Medicare Act's collection mechanism ought not be stayed just like any other creditor collection remedy. Allowing the Secretary to use § 1395g(a) to run afoul of the fundamental bankruptcy policies (already discussed above in rejecting equitable recoupment and in interpreting *Bildisco*) is simply not justified by any overriding policy of the Medicare system. *Dartmouth House Nursing Home,* 24 B.R. at 261 ("unsecured creditor may not require payment of a pre-filing unsecured debt as a condition of providing services to the debtor in possession"); *Whit-*

*comb & Keller,* 715 F.2d at 379; *In re U.S. Financial Inc.,* 594 F.2d 1275 (9th Cir.1979) (regulations requiring payment of pre-filing debts before service can continue must be subordinated to the distribution scheme of the Bankruptcy Code) and cases cited therein.

■ Viewing § 1395g(a) in this light, there is no impediment under the doctrine of sovereign immunity in allowing the debtor to receive payment without adjustment for pre-petition overpayments. Section 1395g(a) recognizes that when the debtor provides there is an amount due the debtor. The right under § 1395g(a) to adjust for overpayment is not a condition to there being an obligation to the debtor but only a concomitant right in the Secretary to adjust for overpayments before making payment. When the debtor files a petition in bankruptcy, the statutory right to recoup pre-petition overpayments must yield to the automatic stay and other policies of the Bankruptcy Code.

■ The policies of the Medicare Act are not harmed or invalidated by this outcome. Although the Secretary is unable to enforce the provider agreement (executory contract) against the debtor prior to assumption, the debtor-in-possession is not relieved of all obligations under the relevant statute. *Bildisco,* 465 U.S. at 534, 104 S.Ct. at 1200 (the debtor-in-possession remains obligated under the NLRA to bargain in good faith prerejection/assumption); *University Medical,* 973 F.2d at 1084 (citing *Midatlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 502, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986)). Therefore, a provider/debtor continues to be subject to the Medicare system's health and safety standards post-petition, pre-assumption/rejection. *University Medical,* 973 F.2d at 1084. Because the debtor's relationship with the Secretary continues to be governed by the standards set forth in the Medicare Act and regulations, continued performance by the debtor-provider does not pose any threat to the Medicare system. Absent such a threat, surely it is in the best interest of the Medicare community for the debtor to continue to provide needed services to the elderly and disabled. *University Medical,* 973

F.2d at 1083–84 (fundamental purposes of Medicare system is provision of adequate medical treatment to elderly and disabled). *See Bildisco,* 465 U.S. at 534, 104 S.Ct. at 1200 (determination that NLRB cannot enforce contract provision does not undermine policy of NLRA which is to protect the process of labor negotiations, not to impose particular regulations on the parties).

Although such a ruling may appear to place the non-debtor party to the contract in an untenable position—that is, unable to enforce the contract and at the same time unable to refuse the debtor's performance—section 365(d)(2) provides such party with the ability to seek a court order requiring the debtor to decide to assume or reject. The Secretary did not take any action to force the debtor to assume or reject the contract. Rather, the Secretary continued to allow the hospital to participate in the Medicare program. *See Tidewater Memorial Hospital,* 106 B.R. at 884 (provider allowed to recover value of services rendered to the Medicare Program for period of time Medicare indicated it was willing to allow the agreements to remain in effect). To allow the government to have the benefit of the debtor's performance without requiring it to pay for such services would result in a windfall to the government. If the Secretary desired not to accept the provider's services in this interim period, the Secretary should have sought an order requiring the debtor to assume or reject. Having failed to do so, the Secretary cannot now assert that the debtor should not be paid for those services it willingly accepted.

In the alternative, the Secretary can move for relief from the stay, which he has requested in this case. Because this court previously found that equitable recoupment does not lie, the only basis for granting relief would be to enable the Secretary to enforce his contractual right to recoupment. However, enforcement of that right is barred prior to assumption in light of *Bildisco,* and the contract in this case has never been assumed. Moreover, if the contract is deemed rejected as the Secretary urges, the Secretary is only entitled to a pre-petition unsecured claim for damages arising from the breach of the contract and any pre-petition default. 11 U.S.C. § 365(g). Accordingly, the Secretary is not entitled to relief from the stay.

The debtor is entitled to payment of the $15,000 by virtue of a harmonization of the policies underlying both the Bankruptcy Code and the Medicare system. Accordingly, the Secretary's request to withhold the $15,000 is denied, except to the extent (see footnote 4) that any of the $15,000 is attributable to pre-petition services by the debtor.