**CASCADE DRIVE LIMITED PARTNERSHIP, Plaintiff–Appellant,**

v.

**WAL–MART STORES, INC., Defendant–Appellee.**

**No. 90–3743**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

March 25, 1991.

Phillip A. Wittmann, Wayne J. Lee, John P. Cerise, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for plaintiff-appellant.

Colvin G. Norwood, Craig L. Caesar, Leopold Z. Sher, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., for defendant-appellee.

Before POLITZ, DAVIS and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Lessor Cascade Drive Limited Partnership (Cascade) sued lessee Wal–Mart Stores, Inc. (Wal–Mart) for specific performance on a lease and monetary damages. The district court concluded that the lease did not impose a duty of continuous operation on Wal–Mart and dismissed Cascade's suit with prejudice. We affirm that part of the district court's judgment dismissing Cascade's claims for injunctive relief; however, we vacate that part of the district court's judgment dismissing Cascade's claims for monetary damages and remand those claims for further proceedings.

I.

In 1982, Wal–Mart and Cascade's predecessor in interest entered into a lease for space in a shopping center in Houma, Loui-

siana. Wal–Mart agreed to lease the space at a base rent of $3.00 per square foot plus one percent of all sales on the leased premises in excess of $11 million per year. The lease was for a 15–year primary base term and Wal–Mart was granted options to extend the lease an additional 35 years.

Conflict between the two parties began when Wal–Mart indicated an intention to relocate to another nearby shopping center. In April 1990, Cascade sued Wal–Mart seeking specific performance under the lease agreement and injunctive relief preventing Wal–Mart from relocating. In July 1990, Cascade amended its complaint to add a claim for $4 million in anticipated damages should Wal–Mart cease operations. In September 1990, the district court granted Wal–Mart's motion for summary judgment, concluding that the lease did not impose any obligation of continuous operation on Wal–Mart. The district court then entered judgment dismissing Cascade's complaint with prejudice. Cascade then lodged this appeal.

## II.

Cascade argues that the district court erred in finding that the lease did not imply an obligation of continuous operation on Wal–Mart. The district court found that such an implied obligation is inconsistent with the affirmative terms of the lease. In particular, paragraph 6 of the lease provides that "[i]t is understood and agreed that the Demised Premises being leased will be used by the Lessee in the operation of a discount department store, but Lessor agrees the store may be used for any lawful retail purpose except for a theater or prescription pharmacy." Further, paragraph 16 of the lease gives Wal–Mart

the right at any time to sublet the Demised Premises, or any part thereof, or to assign this lease, providing that no such subletting or assignment shall relieve the Lessee of any of its obligations hereunder. Any assignment of this Lease or subletting of a majority of the

Demised Premises by Lessee shall be subject to Lessors [*sic*] prior written consent. Should consent be denied by Lessor, then Lessee may at Lessee's option, terminate this lease upon ninety (90) days prior written notice to Lessor.

Despite these provisions, Cascade argues that the lease provision for "percentage rent" on sales implies an obligation on Wal–Mart to operate continuously on the premises. In support of its position, Cascade cites an old Louisiana Supreme Court case, *Selber Bros. v. Newstadt's Shoe Stores*, 203 La. 316, 14 So.2d 10 (1943). However, no similar lease provisions allowing sublet or assignment of the leasehold interest were at issue in the *Selber Bros.* decision. A more recent case which does interpret a lease containing both a percentage rent provision and a broad sublet clause is *Riverside Realty Co. v. National Food Stores*, 174 So.2d 229 (La.Ct.App. 4th Cir.), *writ denied*, 247 La. 1037, 175 So.2d 647 (1965). The *Riverside Realty* court held that the broad sublet clause in the lease negated any implied obligation of continuous operation derived from the percentage rent provision. *Id.* at 231–32. We agree with the district court that the express broad sublet provision in this lease is inconsistent with an implied obligation of continuous operation by Wal–Mart.[1] We therefore affirm that part of the district court's judgment dismissing Cascade's claims for injunctive relief.

However, we disagree with the district court that the resolution of the continuous operation issue disposes of all issues in this case. Although the lease does not impose an obligation of continuous operation upon Wal–Mart, Wal–Mart is limited in what it may do under the lease. Paragraph 6 of the lease provides that the leased premises "may be used for any lawful retail purpose except for a theater or prescription pharmacy." Paragraph 16 gives Wal–Mart the right to sublet a majority of the leased property only upon written approval of the sub-lessee by Cascade. Thus Wal–Mart

---

1. Even if the percentage rent provision and sublet provision rendered the lease ambiguous, ambiguities in a Louisiana lease are to be construed against the lessor. *Tullier v. Tanson Enters., Inc.,* 367 So.2d 773, 778 (La.1979).

may not either (1) use the premises for an illegal or non-retail purpose nor may it (2) sublease a majority of the property without Cascade's written consent.

At the time the district court entered its order, Wal–Mart was still operating on the leased premises. Moreover, the parties stipulated that Wal–Mart had not tendered an assignee or sub-lessee to Cascade for approval before the summary judgment. Since the district court's dismissal of Cascade's suit, the parties agree that Wal–Mart has relocated and has turned over the occupancy of the leased premises to an operation named Bud's Warehouse Outlet.[2] Because the record before this court contains no reference to any events after the district court's dismissal of Cascade's suit, we cannot know whether Bud's occupation of the leased premises violates the lease requirement that the premises be used for "any lawful retail purpose" or whether Bud's is a subtenant that required prior written approval from Cascade. If Bud's were such a subtenant and Cascade refused to consent, Wal–Mart would be entitled to terminate the lease upon 90 days written notice to Cascade as provided in paragraph 16. If during those 90 days the premises were not used for an authorized purpose as provided for in paragraph 6 or were used by an unapproved subtenant in violation of paragraph 16, Cascade may be entitled to damages for breach of the lease agreement for that 90–day period.[3] We therefore vacate that portion of the district court judgment which dismissed plaintiff's claim for monetary damages and remand this case to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

2. Wal–Mart alleges that Bud's Warehouse Outlet is a retail operation and a division of Wal–Mart, Cascade contends that, and therefore Wal–Mart is not in violation of the lease. This issue requires further factual investigation by the parties and the district court.

3. In its amended complaint, Cascade specifically asked for monetary damages for Wal–Mart's anticipated actions.