In re **OKLAHOMA PLAZA INVESTORS, LTD.**, Debtor.

**OKLAHOMA PLAZA INVESTORS, LTD., Plaintiff, Appellee/Cross–Appellant,**

v.

**WAL–MART STORES, INC., Defendant, Appellant/Cross–Appellee.**

Bankruptcy No. 89–01236–C.
Adv. No. 90–0151–C.
No. 92–C–474–E.

United States District Court,
N.D. Oklahoma.

Jan. 18, 1994.

---

A. Daniel Woska, Oklahoma City, OK, for Plaintiff.

Jon B. Comstock, Bentonville, AR, for Defendant.

## ORDER

ELLISON, Chief Judge.

Now before the Court is an appeal of a decision by the United States Bankruptcy Court for the Northern District of Oklahoma. The Bankruptcy Court held that Appellant Wal–Mart Stores owed Appellee Oklahoma Plaza Investors, Ltd. ("OPI") $132,000 for breaching a commercial property lease.

The primary issue in this appeal is whether the Bankruptcy Court, erred, as a matter of law, in concluding that the lease was unambiguous. Four other issues also are raised (1) whether OPI rejected the Wal–Mart lease pursuant to 11 U.S.C. § 365; (2) whether Wal–Mart's defenses of waiver and estoppel were valid; (3) whether the Bankruptcy Court erred in awarding $132,000 in damages; (4) whether Wal–Mart tortiously breached the contract and (5) whether Wal–Mart breached an implied covenant of the lease.

### I. Summary of Facts

On May 6, 1977, Wal–Mart signed a 20–year lease at Rolling Hills Shopping Center in Catoosa, Oklahoma. Wal–Mart moved into the shopping center and began doing

business as a discount store.[1] Under the terms of the lease, Wal–Mart paid $59,400 a year for rent and was to pay more depending on the amount of the store's gross sales. The lease also included a *Use of Premises* clause, which stated:

> **It is understood and agreed that the demised premises being leased will be used by the Lessee [Wal–Mart] in the operation of a discount store, but Lessor [OPI] agrees the store may be used for any lawful purpose other than the operation of a supermarket . . .**

The lease also included a *Default Clause,* which read:

> **If the demised premises shall be *deserted* for a period of over 30 days, or if Lessee shall be adjudicated a bankrupt, or if a trustee or receiver of Lessee's property be appointed, or if Lessee shall make an assignment for the benefit of creditors, or if default shall at any time be made by Lessee in the payment of rent reserved herein, or any installment thereof for more than 10 days after written notice of such default by the Lessor, or if there shall be default in the performance of any other covenant, agreement, condition, rule or regulation herein contained or hereafter established on the part of the Lessee for 30 days after written notice of such default by the Lessor . . . In such case, the Lessor may, at its option, relet the demised premises . . .**

The dispute leading to this appeal began in December of 1988 when Wal–Mart closed its discount store—about a month after OPI filed for bankruptcy.[2] Wal–Mart, however, continued to pay rent and used the premises occasionally for storage and as a meeting facility.[3]

On May 29, 1990, OPI filed a three-count *Complaint* against Wal–Mart in Bankruptcy Court, alleging (1) breach of express provisions of the lease; (2) breach of an implied covenant of continuous operations; and (3) tortious breach of contract. The Bankruptcy Court later dismissed the second count. Wal–Mart, as defenses to the *Complaint,* asserted that the lease was rejected pursuant to 11 U.S.C. § 365. Wal–Mart also raised the defenses of estoppel, waiver and laches.

In two separate orders, the Bankruptcy Court decided the issues raised in OPI's *Complaint.* On February 21, 1991, the Bankruptcy Court granted summary judgment in favor of OPI. The court first found that, contrary to Wal–Mart's assertions, that OPI did not reject the leasee with Wal–Mart under the provisions of 11 U.S.C. § 365. Second, the Bankruptcy Court found that Wal–Mart *deserted* the shopping center and therefore breached the lease.

In the second *Order,* filed on May 21, 1992, the Bankruptcy Court found that Wal–Mart, by breaching the lease, owed OPI $131,096.[4] The Bankruptcy Court also found that Wal–Mart's defenses of waiver, estoppel and laches were without merit.

Following the two orders, Wal–Mart filed a *Notice of Appeal* on June 1, 1992. On June 8, 1992, OPI filed its *Cross–Appeal.* Both appeals challenged the February 21, 1992 and May 21, 1992 orders.[5]

## II. Legal Analysis

 The appeal focuses on the Bankruptcy Court's interpretation of the lease between Wal–Mart and OPI, which is governed by Oklahoma contract law. *Mercury Investment Co. v. F.W. Woolworth Co.,* 706 P.2d 523, 529 (Okla.1985). Under Oklahoma law, if the language of a contract "is unambiguous, its language is the only legitimate evidence of what the parties intended." *Ollie v. Rainbolt,* 669 P.2d 275, 279 (Okla.1983).

---

1. In 1984, while Wal–Mart still operated a discount store at Rolling Hills, OPI bought the lease from King.

2. The debtor initially filed bankruptcy in the United States Bankruptcy Court in the Central District of California. On May 4, 1989, the case was transferred to the Northern District of Oklahoma.

3. Wal–Mart removed its inventory and fixtures, locked the doors and covered the windows with brown paper. See page 4 of February 21, 1991 Bankruptcy Order.

4. This includes damages caused by bursting water pipes.

5. The parties also appealed an October 5, 1990 *Order.* However, that deals with Case No. 90–C–642–B and will not be discussed here.

The parties' intent cannot be determined from the surrounding circumstances, but must be gathered from the words used. *Id.*. If the language of a lease or contract is ambiguous, extrinsic evidence may be used to determine the practical construction of the agreement as evidenced by the acts and conduct of the parties.

In this case, the Bankruptcy Court first concluded that the language of the lease, taken as a whole, was **"clear, plain, simple and unambiguous."** The Bankruptcy Court then found, relying on the language of the lease, that Wal–Mart breached the lease by closing down its retail operation. Stated the Bankruptcy Court:

> **This Court finds that the lease is unambiguous and that its language is the only legitimate evidence of what the parties intended ... *The Default Clause of the Lease is clear, plain, simple and unambiguous and says that if lessee deserts the premises the Lease is in default.* The undisputed facts shows that Wal–Mart has ceased operating a discount store on the premises, removed its inventory and fixtures, locked the door and covered the windows with brown paper. This is a desertion of the premises and a breach of the lease.**

The pivotal issue here is the meaning of the word "deserted". The lease stated that a default would occur **"If the demised premises shall be *deserted* for a period of over 30 days ..."** The question, therefore, is: Is "deserted" unambiguous within the context of the lease? [6]

A contract term is unambiguous if there is *only one reasonable interpretation* within the contract language. Stated another way, an ambiguous term is one about

which reasonable minds could differ. *Seiden Associates v. ANC Holidays,* 959 F.2d 425, 428 (2d Cir.1992) *Also, see, generally, Mercury Investment Co. v. F.W. Woolworth Co.,* 706 P.2d 523, 529 (Okla.1985).

The first question in this case is whether "deserted", as used in the lease, has only one *reasonable interpretation.* Words in a contract are to be understood in their ordinary and popular sense. *Okla.Stat.Tit. 15 § 160.* The "ordinary" and "popular" meaning [7] of "desert" is defined by *The American Heritage Dictionary* as **"to forsake or leave especially when most needed; abandon."** *Webster's Collegiate Dictionary* defines desert as **"to withdraw from or leave ... without intent to return."** [8]

A precise definition seems virtually impossible, given that dictionaries do not define the word in the exact same fashion. At first blush, that fact suggests that a "plain" and "clear" meaning of the word is difficult since it is not defined by the lease. However, even beyond that, it is unclear—from the language in the lease—whether Wal–Mart deserted the premises. From OPI's perspective, Wal–Mart, by closing its retail store, deserted (*foresook, withdrew from, left especially when most needed, abandoned*) the shopping center. On the other hand, Wal–Mart—despite closing its discount store— remained at the shopping center in a limited capacity; it continued to pay rent and use the facility for storage and/or meetings. That presence, albeit limited, arguably does *not* constitute deserting or abandoning in the ordinary and popular sense of the word.

The Bankruptcy Court, however, also looked at other language of the lease in reaching its decision. Beside the word "deserted", the Bankruptcy Court looked to lan-

---

**6.** The standard of review on this matter is de novo. *Aetna Casualty v. Pintlar Corp.,* 948 F.2d 1507, 1511 (9th Cir.1991).

**7.** The statute reads that "the words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." The word is not defined in the lease and it is unclear to this Court whether a

"special meaning" was given to the word "desert" or any other language in question here.

**8.** Volume 26A of *Corpus Juris Secundum,* page 861, states: "The word [desert] connotes an act essentially voluntary, intentional, and willful in nature, and has been defined as meaning to abandon, forsake, or leave; to withdraw at certain times, when assistance and cooperation are required, or to separate oneself from that to which one ought to be attached."

guage in the *Use of Premises Clause* to make its decision. That clause reads: "It is understood and agreed that the demised premises being leased will be used by the Lessee [Wal–Mart] in the operation of a discount store, but Lessor [OPI] agrees the store may be used for any lawful purpose other than the operation of a supermarket ..." From the Bankruptcy Court's viewpoint, that language clarified the intent of the parties. It wrote:

> The *Use of Premises Clause* provides that Wal–Mart will use the premises for a discount store, but can use the store for any lawful purpose. This clause merely means that while Wal–Mart is operating a discount store it can also use the store for any other lawful purpose. It does not mean Wal–Mart can discontinue using the premises for a store and use them for any other lawful purpose without being in default. In any event, the use of the premises for storage or meetings after a complete closing of the store is mere subterfuge to try to avoid the consequences of obvious desertion.

The undersigned, however, finds the premises clause to be of limited value in defining the word "deserted" or determining the intent of the parties in making the lease. In fact, the premises clause itself is ambiguous; it has more than one reasonable meaning within the context of the lease. For example, it can be read the way the Bankruptcy Court interpreted it: Wal–Mart *must use* the premises to operate a discount store *in addition* to any other lawful purpose. But the clause also can mean that Wal–Mart may use the premises to operate a discount store *or* "for any lawful purpose" (including storage and a meeting facility) other than the operation of a supermarket.[9] Under the former interpretation, Wal–Mart deserted and defaulted because it did not operate a discount store in the shopping center. Under the latter interpretation, Wal–Mart did not desert or default because it used the facility for storage and meeting—a lawful purpose.[10]

Had the parties expressly intended for Wal–Mart to operate a retail discount store on the premises for the life of the lease, why not say so in clear and precise words? Why not define "deserted" within the four corners of the lease? For reasons not in the record, the parties failed to expressly spell out such key provisions in the lease. As a result, the lease is ambiguous. The Court concludes that extrinsic evidence should be examined before determining the "meaning" of the lease. Consequently, the case is REMANDED[11] *See Republic Resources Corporation v. ISI Petroleum West Caddo Drilling Program 1981*, 836 F.2d 462, 465 (10th Cir. 1987)(The interpretation of an ambiguous contract is a question of fact, which an appellant court *may not* make.)[12]

---

9. A similar clause was interpreted in *Cascade Drive Ltd. v. Wal–Mart Stores, Inc.*, 934 F.2d 61 (5th Cir.1991). In that case, the *Use of Premises* clause read: "the Demised Premises being leased will be used by the Lessee in the operation of a discount department store, but Lessor agrees the store may be used for any lawful *retail* purpose except for a theatre or prescription pharmacy." The Fifth Circuit interpreted that to mean that Wal–Mart could not (1) use the premises for an illegal or non-retail purpose. In this case, the word "retail" was not used here and, as a result, it is unclear to the undersigned as to whether the parties intended a "retail" purpose.

10. The undersigned has examined the cases cited by the parties on this issue. They shed little light on the issue of the meaning of "deserted." Arguably, the cases, taken as a whole, support this Court's position that the lease is ambiguous.

11. Another concern about the Bankruptcy Court's decision is that it considered circumstances outside the four corners of the lease.

Wrote the Bankruptcy Court: "A savings and loan advanced money to construct the premises and the Debtor purchased the shopping center after Wal–Mart had entered into its lease. Additionally, Wal–Mart is the major or anchor tenant in the shopping center and all other tenants depend on it to create customer traffic." In essence, it appears the Bankruptcy Court took a "common-sense" approach in interpreting the lease as it did. And, once it examines the surrounding circumstances, the Bankruptcy Court may very well come to the same conclusion (i.e. Wal–Mart breached the lease). However, at this juncture, the Bankruptcy Court erred, as a matter of law.

12. After review of the record, this Court affirms the Bankruptcy Court's decision regarding (1) the issue of 11 .U.S.C. § 365(2) denial of Wal–Mart's defenses and (3) the issue of implied covenants in the lease. The remaining issues are intertwined with the question of whether Wal–Mart breached the lease, and, as a result, should be re-examined on remand.

### III. Conclusion

The Oklahoma Supreme Court states: "But where a contract is complete in itself and, as viewed in its entirety, is unambiguous, *its language is the only legitimate evidence of what the parties intended. The intention of the parties cannot be determined from the surrounding circumstances, but must be gathered from a four-corners' examination of the contractual instrument in question.*" *Mercury Investment Co.*, 706 P.2d at 529.

The Bankruptcy Court found that the language of the lease to be unambiguous; this Court reverses that finding. The intention of the parties cannot be determined from a four-corners' examination of the lease. For example, the word "deserted"—a key term in this dispute—is capable of more than one reasonable meaning within the context of the lease. Moreover, the lease, taken as a whole, is ambiguous, including the *Use of Premises Clause.* The question as to whether Wal–Mart deserted and consequently breached the lease cannot be answered simply by reading the lease. Therefore, the case must be REMANDED so that the Bankruptcy Court, as trier of fact, can examine relevant extrinsic evidence. *Seiden,* 959 F.2d at 428.