**In re SAE YOUNG WESTMONT–CHICAGO, L.L.C., Debtor.**

**No. 01 B 01179.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 2, 2002.

---

Robert V. Shannon, Bell, Boyd & Lloyd, for DCFS.

Alan S. Farnell, Stanley D. Schwartz, Chicago, IL, for Debtor.

### *MEMORANDUM OPINION OVERRULING STATE'S OBJECTION TO ASSUMPTION AND ASSIGNMENT OF LEASE*

JACK B. SCHMETTERER,
Bankruptcy Judge.

This bankruptcy case was filed under Chapter 11 of the Bankruptcy Code.

The Debtor Sae Young Westmont-Chicago, L.L.C. ("Debtor"), debtor-in-possession and lessor of certain premises, moved to assume and assign its long-term lease of Debtor's property with the State of Illinois Department of Children and Family Services ("State") pursuant to 11 U.S.C. § 365(a) and (f) as part of a sale of Debtor assets. The State had two objections: (1) Debtor's motion to assume and assign its lease with the State was not filed before the court ordered deadline of September 15, 2001; and (2) a bankruptcy judge lacks jurisdiction to rule on this issue because the Eleventh Amendment of the U.S. Constitution bars federal courts from hearing suits against states. Debtor responded that its motion to assume and assign the lease was filed one day prior to the ordered deadline. Debtor further asserted

that states ceded their immunity over bankruptcy matters at the Constitutional Convention. Alternatively, Debtor contended that its motion is not a suit against the State and therefore does not violate the 11th Amendment.

As discussed below, Debtor's motion was not untimely; the states of this nation do have immunity against suits filed against them in bankruptcy courts, but the Debtor's motion was one to affect Debtor's property and permit it to assign the lease as part of its property sale rather than a lawsuit against the State; and therefore the State of Illinois has no sovereign immunity against Debtor's motion. The State's objections are therefore overruled by separate order.

## FACTS AND BACKGROUND

Debtor Sae Young Westmont–Chicago is an Illinois Limited liability Company doing business in Chicago, Illinois. In 1997, Debtor established five separate land trusts to acquire leasehold interests in five buildings at the former world headquarters of Sears & Roebuck Company (the "properties"). It is one of these properties, located at 3301 West Arthington Avenue Chicago, Illinois (the "property" or the "3301 property"), which lies at the center of the present dispute. Debtor received a $2.17 million line of credit from Bank One to fund construction improvements on the property, which was secured by a leasehold mortgage lien. However, Debtor had difficulty financing this loan due to a low occupancy rate for the properties.

The Illinois Department of Children and Family Services ("DCFS"), an Illinois state agency, signed a 99–year lease on May 11, 1999. Under the lease, DCFS was to begin occupancy within 195 days of May 11, 1999. Debtor committed to perform certain improvements prior to DCFS taking occupancy. However, DCFS alleges that the improvements were not completed on time so the parties agreed to extend the occupancy date to April 30, 2000. According to DCFS, Debtor agreed to pay $1,000 a day for each additional day DCFS was delayed from occupying the property. However, DCFS contends that Debtor again failed to complete the improvements on time. Nonetheless, DCFS took occupancy in September of that same year, but refused to pay rent because it alleged that Debtor failed to provide certain improvements.

Due to this and other operational problems and a low occupancy rate, Debtor defaulted on its loan from Bank One which filed a foreclosure action in state court. Debtor then filed for Chapter 11 Bankruptcy protection on January 11, 2001. After initial attempts to market its properties failed, Debtor's only option was to dispose of them at auction. Debtor sought approval to sell by auction substantially all of its assets free and clear of liens pursuant to Section 363 of the Code, and also sought authorization as part of the sale process to assume and assign its tenant leases to the successful bidder pursuant to § 365. An Order authorizing the auction was entered on June 6, 2001. The Order provided for assumption and assignment of executory contracts and was contingent upon the purchaser providing adequate assurance that it would cure any default. The auction was held on June 21, 2001, and as a secured creditor Bank One was successful bidder with a $1.1 million credit bid plus an offer of cash to cure lease defaults.

On that same day, Debtor reached an agreement to facilitate its dispute with DCFS. Under that agreement, DCFS was to pay Debtor an agreed sum if the lease was assigned by July 31, 2001. (DCFS Supplemental Memorandum, Exhibit F.) However, in the agreement DCFS reserved the right to object to assignment

and also reserved its sovereign immunity and did not consent to jurisdiction of this court.

On August 21, 2001, Debtor, acting on request from Bank One, sought approval to reject certain unrelated tenant leases and for an extension of the time until September 15, 2001, to assume or reject the DCFS lease. The September 15th date was asserted by Debtor to be based on an agreement between Bank One and DCFS. Debtor's motion was granted without objection on September 12. Two days later, and one day before the agreed deadline, Debtor filed its motion to assume and assign the DCFS lease which was conditioned upon subsequent approval of the sale of its assets. On September 24, Debtor moved for approval of the asset sale and for an Order authorizing it to assume the DCFS lease and to assign the lease to City Place International, a wholly owned subsidiary of Bank One. An Order approving the sale was entered on September 25 and the sale closed on October 5. However, DCFS objected to assumption and assignment of its lease.

Prior to the sale, Bank One had asked DCFS for a list of repairs that needed to be made to the property, and such a list was compiled by DCFS. (See Debtor's Exhibit A). After the sale, DCFS asked Bank One for information regarding City Place's ability to cure existing defaults and to perform under the lease. Bank One's attorney responded by letter dated September 22, 2001:

> It is the Bank's customary practice, and the expectation here, that the Bank will fund amounts sufficient to correct punch list items such as the punch list previously furnished by DCFS to the Bank in the event City Place does not already have such funds. The Bank also expects to fund shortfalls in operating deficits for the provision of building services, if

> necessary, during the period of time City Place expects to own the properties.

See Exhibit G Supp. Mem. of DCFS in Opposition To Motion to Assume and Assign Lease. The Bank's bid, as earlier noted, included cash necessary to cure lease defaults, and the Bank's letter of assurance was a reflection of that obligation. That constituted adequate assurance of future lease performance. However, despite such assurance and without claiming here in any way that the financial backing of Bank One was inadequate, DCFS vacated the premises in November of 2001. In December, the State filed the instant objection to assumption and assignment of the lease. The State contends that the motion to assume and assign the lease that was filed on September 14 did not satisfy the September 15 deadline because the sale upon which that motion was conditioned was not approved until September 25. Thus, the State contends that its rights under 11 U.S.C. § 365(d)(2) of the Code were violated. The State also asserts that jurisdiction does not lie here because it has Sovereign immunity from suit in federal court.

At no time did the State object to the assignment on grounds that lease terms prohibited assignment by Debtor. A copy of the lease was filed as part of the record, and no provision was found in it that prohibited lease assignment by Debtor or required DCFS' consent to the assignment.

## DISCUSSION

*The State's Section 365(d)(2) Objection*

■ The State contends that it would be deprived of protections under § 365(d)(2) if Debtor's motion to assume and assign its lease is granted. Section 365(d)(2) provides:

In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired *lease of residential real property* or of personal property of the debtor at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2) (emphasis added).

By its terms, Section 365(d)(2) does not apply to the commercial lease in issue here. 3 *Collier on Bankruptcy* ¶ 365.04[5] (15th Ed. Rev.2001) (noting that § 365(d)(4) only covers debtor-lessees of commercial real estate). Whether this is an oversight or a conscious decision by Congress to allow a debtor-lessor the broadest possible flexibility in deciding whether to assume or reject a lease is unclear. *See In re Oklahoma Plaza Investors, Ltd.*, 124 B.R. 108, 112 (Bankr. N.D.Okla.1991) (noting that debtor-lessor does not have to accept or reject a contract and may continue to operate its business under § 1108), *rev'd and remanded on other grounds*, 203 B.R. 479 (N.D.Ok. 1994). The drafters were certainly cognizant that debtors are sometimes lessors. See 11 U.S.C. § 365(h) (rules governing debtor-lessor rejection of commercial real estate). "Because the special limits of section 365(d)(4) are inapplicable when the debtor is a lessor, the better approach would be to apply the rule of section 365(d)(2) to leases of nonresidential real property under which the debtor is the lessor, in recognition of the apparent oversight." *Collier, supra,* ¶ 365.04[5].

 Congress has evinced a desire to give debtors broad latitude to decide whether to accept or reject a contract in a reorganization case. *National Labor Relations Board v. Bildisco,* 465 U.S. 513, 529, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). However, there are circumstances where a creditor may not be able to afford being left in limbo about its status vis-a-vis the estate. *See Moody v. Amoco Oil Company,* 734 F.2d 1200, 1216 (7th Cir.1984) (party that cannot afford the uncertainty pending reorganization may seek relief under § 365(d)(2)). Thus, Section 365(d)(2) allows such a creditor to ask the court to impose a deadline on the debtor to decide whether to accept or reject a lease. *Id.* A debtor that fails to respond within the court ordered deadline is deemed to have rejected the contract or lease. *Theatre Holding Corp. v. Mauro,* 681 F.2d 102, 104 n. 1 (2d Cir.1982). Section 365(d)(2) commits the decision whether to impose a deadline to the court which must balance the debtor's need to carefully consider whether rejecting the lease is in the best interests of the estate with the lessees' interest in knowing whether the debtor will perform under the lease. 11 U.S.C. § 365(d)(2); *See Matter of Whitcomb & Keller Mortgage Co., Inc.,* 715 F.2d 375, 379 (7th Cir.1983) (applying the reasonableness standard to an executory contract); *Theatre Holding,* 681 F.2d 102 at 105 (case applying reasonableness standard to debtor-lessee).

Despite the possible dispute over whether § 365(d)(2) applies at all to the subject commercial property, the parties assumed that it does and the Debtor requested approval of their agreed deadline. Neither has objected to enforcement of that deadline. The State argues that Debtor's motion filed on September 14 ("the motion") did not satisfy the deadline because it was conditioned upon approval of the sale which did not come until 10 days after the September 15th deadline. Debtor argues in response that it is not precluded from filing its motion to assume and assign the lease prior to approval of the sale.

The State confuses the notice requirement under § 365(d)(2) with the procedure to transfer estate property to a third-party under § 365(f)(1)-(2). Section 365(d)(2) requires a debtor to "determine" whether to assume or reject a contract or lease within a specified time determined by the court upon request of a party to the lease or contract.11 U.S.C. § 365(d)(2). That statute does not set a deadline for filing a motion to assume and assign a lease or contract. Here, Debtor's motion filed and served within the deadline notified the State that Debtor intended to assume and assign its lease with DCFS. Thus, the motion satisfied the time requirement under § 365(d)(2). Debtor's interest in the lease was later effectively transferred to Bank One pursuant to § 365(f)(1)-(2) when the court approved sale and the assumption and assignment of the lease pursuant to Debtor's motion filed on September 24.

The State argues that if the sale had not subsequently been approved the lease would have been deemed as rejected. Therefore, according to the State, this shows that the motion when filed could not have been an effective motion to assume and assign the lease. This assertion is unsupported. The State does not cite authority for its contention that failure to obtain approval of the proposed sale would have been deemed a rejection by the Debtor, and such result would be inconsistent with provisions of §§ 365(d)(2), 365(f), and Rule 6006 Fed.R.Bankr.P.

██ The policy underlying § 365(d)(2) is to give a debtor broad latitude to decide whether to accept or reject a contract as part of its reorganization. *National Labor Relations Board*, 465 U.S. at 529, 104 S.Ct. 1188; *Matter of Whitcomb*, 715 F.2d at 379 (policy is to give debtor reasonable time to decide whether to reject contract). The court will exercise its discretion to impose a deadline to give notice of such decision only if a creditor shows that a deadline is needed. *Moody*, 734 F.2d at 1216 (party that cannot afford to wait can ask court to require debtor to decide within specified time whether to reject contract). Rule 6006 requires a party that seeks a deadline to proceed by way of a motion under Rule 9014. Fed.R.Bankr.P. 6006(a). Here, the State failed to file such a motion. The deadline that the State relies upon was requested by motion of the Debtor, not the State. In fact, the State did not file pleadings to invoke § 365(d)(2) until several months after the sale had closed and several weeks after it had vacated the property when it filed the present objection to Debtor's motion to assume and assign its lease. Although, § 365(d)(2) allows any party to the lease to request a deadline for Debtor to assume or reject the lease, it would be inconsistent with the policy underlying that statute to allow the State to invoke Debtor's own deadline against it. Thus, apart from the fact that Debtor met the deadline, the State cannot now complain that it was deprived of § 365(d)(2) protection when it never requested of the court that a deadline be imposed.

*The State's Eleventh Amendment Argument*

The State contends that jurisdiction does not lie here to approve the assumption and assignment of the lease. Its argument rest on the Eleventh Amendment to the U.S. Constitution which states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. By its terms, the Eleventh Amendment only applies to diversity suits. However, the Supreme Court, beginning with *Hans v. Louisiana*, 134 U.S.

1, 10–11, 10 S.Ct. 504, 33 L.Ed. 842 (1890), held that the Eleventh Amendment bars federal courts from hearing unconsented suits against states unless permitted by Congress. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (listing cases since *Hans* that bar private suits against unconsenting states). In recent cases, the court has trended toward expanding the Eleventh Amendment restriction on Article III courts with a series of decisions limiting Congress' power to create causes of action that allow individuals to hale states into federal court:

> Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

*Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 72–73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *See also Alden v. Maine,* 527 U.S. 706, 745, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (holding in a non-bankruptcy case that Congress cannot subject states to suit even in states' own courts); *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 680–81, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (state does not constructively waive immunity protected by 11th Amendment by participating in nongovernmental function regulated by federal government); *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank,* 527 U.S. 627, 647–48, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999) (Congress cannot authorize suits against states for patent infringement); *Kimel v. Florida Board of Regents,* 528 U.S. 62, 67, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (Congress cannot abrogate states' immunity under Age Discrimination Act); *Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (11th Amendment bars private suits against states under ADA).

Although *Seminole Tribe* was not a bankruptcy case, that opinion has lead to a majority of bankruptcy cases holding that Congress cannot abrogate states' immunity to suit in federal courts under its powers to enact uniform bankruptcy laws. *In re Ellett,* 254 F.3d 1135, 1139 (9th Cir. 2001); *In re Franceschi,* 268 B.R. 219, 223 (9th Cir. BAP 2001); *In re Mitchell,* 209 F.3d 1111, 1121 (9th Cir.2000); *In re Chandler,* 251 B.R. 872, 874 (10th Cir. BAP 2000); *In re Straight,* 248 B.R. 403, 416–17 (10th Cir. BAP 2000); *In re Sacred Heart Hosp.,* 133 F.3d 237, 245 (3rd Cir. 1998); *Matter of Fernandez,* 123 F.3d 241, 245 (5th Cir.1997); *In re Creative Goldsmiths of Wash. D.C., Inc.,* 119 F.3d 1140, 1147 (4th Cir.1997); *In re Peterson,* 254 B.R. 740, 744 (Bankr.N.D.Ill.2000); *In re Service Merchandise Co., Inc.,* 265 B.R. 917, 922 (M.D.Tenn.2001).

In a recent opinion, this court concluded that it was compelled by *stare decisis* to follow the Supreme Court majority in striking down 11 U.S.C. § 106 as an invalid abrogation of state sovereign immunity. *In re Claxton,* 273 B.R. 174 (Bankr.N.D.Ill. 2002). That opinion dealt with the issue of whether states ceded their sovereignty over bankruptcy matters at the Constitutional Convention. It reasoned that under the bankruptcy clause of the Constitution giving Congress authority to enact a uniform bankruptcy law, states ceded sovereignty over the substance of national bankruptcy law, even though current Supreme Court Eleventh Amendment jurisprudence holds that they did not cede sovereign immunity to suits in federal bankruptcy

courts. *Claxton* further opined that substantive bankruptcy law may therefore be enforced against Illinois in its state courts and administrative bodies, as the State of Illinois conceded in that case. Discussion of those issues will not be repeated here. Suffice it to say that a debtor in bankruptcy may not sue an unconsenting state in federal courts. The flaw in the State's argument here lies in the nature of the proceeding in issue which did not constitute suit against the State.

Congress has committed exclusive jurisdiction over bankruptcy cases to federal district courts, and authority over such cases as allowed by statute has been delegated to bankruptcy judges in this District. 28 U.S.C. § 1334(a); Internal Operating Procedure 15(a). Pursuant to 28 U.S.C. § 1334(e), district courts (hence bankruptcy judges) have exclusive jurisdiction over a debtor's estate which consists of all legal or equitable interests that the debtor has "wherever located and by whomever held." *In re Simon*, 153 F.3d 991, 996 (9th Cir.1998) (citation omitted); 28 U.S.C. § 1334(e); 11 U.S.C. § 541. Thus, the bankruptcy judge has such authority over a debtor's property, no matter where the property is located. *Katchen v. Landy*, 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). The jurisdiction over a debtor's estate is *in rem* jurisdiction which involves determining the status of property and therefore the rights of persons with respect to that property. In contrast, *in personam* jurisdiction seeks to impose an obligation on a person. See Black's Law Dictionary 797, 795 (7th ed.1999).

The Supreme Court has recognized an *in rem* exception to the 11th Amendment protection afforded to states. In *California and State Lands Commission v. Deep Sea Research, Inc.*, 523 U.S. 491, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998), the court held that there was an *in rem* exception to the 11th Amendment in admiralty suits where the state did not have possession of the property involved in the dispute. cf. *In re State of New York*, 256 U.S. 490, 497, 41 S.Ct. 588, 65 L.Ed. 1057 (1921) (admiralty cases not exempt from 11th Amendment bar to suits against states). The *Deep Sea Research* reasoning applies to a bankruptcy proceeding where the property is in the custody of the bankruptcy court and therefore not in possession of the state claiming sovereign immunity. *See In re Bliemeister*, 251 B.R. 383, 393 (Bankr. D.Ariz.2000). A panel of the 11th Circuit has applied the same reasoning to a proceeding in holding that Florida could not invoke the 11th Amendment where it was not named in the complaint nor served with process and the property in issue was under control of the court. *Bouchard Transp. Co., Inc. v. Updegraff*, 147 F.3d 1344, 1349 (11th Cir.1998).

Panels from the 4th and 5th Circuits have also recognized an exception to 11th Amendment immunity where the bankruptcy court is merely exercising its *in rem* jurisdiction over the debtor's estate. *See Murphy v. Michigan Guaranty Agency*, 271 F.3d 629, 632–33 (5th Cir.2001); *In re NVR, LP*, 189 F.3d 442, 450 (4th Cir. 1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 815 (2000) (noting the distinction between jurisdiction to dispose of a debtor's estate and a suit against a state); *Virginia v. Collins*, 173 F.3d 924, 929 (4th Cir.1999); *Texas v. Walker*, 142 F.3d 813, 822–23 (5th Cir.1998); *State of Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777, 787 (4th Cir. 1997); *Schlossberg v. Maryland*, 119 F.3d 1140, 1148 (4th Cir.1997). A panel of this Circuit has impliedly recognized this exception in *In re Platter*, 140 F.3d 676, 680 (7th Cir.1998) where the court in dicta acknowledged that an unconsenting state may have its rights affected by a bank-

ruptcy proceeding. *See also Menk v. Ready Mix,* 241 B.R. 896, 908 (9th Cir. BAP 1999) (exclusive federal jurisdiction over bankruptcy case and all issues related to estate property).

■ Since the 11th Amendment does not immunize states from substantive application of the Bankruptcy Code, the first issue for a court facing a sovereign immunity challenge is to decide whether a particular proceeding is a suit against the state. *NVR,* 189 F.3d at 450 (11th Amendment only reaches judicial proceedings that are suits). The *NVR* opinion applied a two-part test to decide whether a proceeding was a suit against the state: (1) the degree of coercion exercised by the federal court in compelling the state to attend the proceeding; and (2) whether resolution of the case would require in personam jurisdiction over the state. *Id.* at 452. Although the test was stated in the conjunctive, the analysis turns on whether either of these elements is present. *Id.* at 452–54. The first issue focuses on whether the state is compelled to participate in the proceeding by service of process and whether the state was named as a defendant in an adversary complaint. *Id.* at 452–53. The second issue centers on whether the court is required to demand an affirmative act by the state, such as requiring an expenditure from the state treasury. *Id.* at 453–54.

■ The State argues that approval of *Debtor's motion to assume and assign the* lease was a suit because in order to approve the motion there must be a determination that any defaults have been cured and the purchaser must assure that it will perform any future obligations under the lease. Thus, the State contends that such a finding is equivalent to a judgment requiring it to perform under the lease or, alternatively, an advisory opinion that Debtor or the Bank may take to the Illi-

nois Court of Claims. The State relies upon *In re NVR, LP* for support. However, the State ignores the distinction that *NVR* made between cases that are suits against a state and those that merely affect the state indirectly. *Id.* at 450. In *NVR,* the court applied the two-pronged test discussed above and held that a petitioner's § 1146(c) motion to recoup taxes paid to the state was a suit because the district court order would require the state to repay the taxes. The court distinguished its holding from its prior decisions in *Collins* and *Antonelli* where it held that the bankruptcy proceedings were not a suit against the state. *Id.* The key factor which distinguished *NVR* from *Antonelli* and *Collins* was that the state in *NVR* successfully framed the proceeding before the district court as either a suit against the state or an advisory opinion, which had to be reversed under either scenario. *Id.* at 453.

However, the present case is clearly distinguishable. First, there has been no compulsory process used to require the state to appear in this forum. In fact, the State only appeared here to challenge jurisdiction. Nor was the State named as a defendant in any adversary complaint. Thus, as in *NVR,* the State has not been coerced to appear in this case, and therefore the first element of the test does not support the claim that this matter is a suit. *NVR,* 189 F.3d at 452–53.

Likewise, the State cannot show that the exercise of jurisdiction over Debtor's estate constitutes an impermissible exercise of jurisdiction over it. Jurisdiction over the present matter is based on 28 U.S.C. § 1334(a) which makes this the exclusive forum for Debtor's bankruptcy, and 28 U.S.C. § 1334(e) which places all of Debtor's property in this proceeding. Only a federal court has authority over a bankruptcy debtor's property, and no state

agency has such authority once a bankruptcy case is filed. Thus, jurisdiction over authority to approve assignment of the DCFS lease derives not from jurisdiction over the State, but from jurisdiction over Debtor's estate. *See Antonelli,* 123 F.3d at 787. The State argues that the authorization of assumption and assignment of the lease automatically requires that it be ordered to perform under the lease. However, while the debtor was authorized to assume and assign, the order did not attempt to prevent the State from vacating the premises and no order or judgment was issued against the State. As stated above, the nature of *in rem* jurisdiction is to determine the disposition of property within the bankruptcy proceeding. The permission given by this court to Debtor to assign its lease did not transform that permission into an *in personam* action against the State, and its rights and obligations under the lease were not adjudicated. The assignee merely became substituted for the Debtor on the lease.

Further, the State's assertion that the order entered here is an advisory opinion is without merit. First, in recognition of the limits of this court's jurisdiction, Debtor did not seek to litigate any disputes it may have with the State in this forum. Instead, Debtor filed a motion pursuant to the Code to dispose of its assets, and in conjunction with that motion sought approval to assume and assign the lease in issue. Although, the State's briefs allude to some asserted defaults under the lease, it has opted not to appear here to raise that issue. Thus, the entry of an administrative order over bankruptcy estate property cannot be regarded as judgment on the merits of any dispute between the parties. Under Section 365(f)(1)–(2) the bankruptcy judge must determine whether adequate provision has been made for any needed lease cure and that the purchaser of the property has given adequate assurances that it will perform under the lease. Absent any evidence to the contrary, the evidence presented here of Bank One's assurances satisfied that requirement and the order approving the assumption and assignment of the lease was therefore entered. That was a decision to be made in this case. But attempts to enforce the lease assignee's rights in some state court may of course give rise to ordinary issues involving contract disputes about asserted breach or other defenses, and those disputes were not decided here.

Authority in this Circuit has stated that the decision to waive 11th Amendment immunity rests solely with the state, and that every reasonable indulgence should be given in favor of not finding a waiver of immunity. *MCI Telecommunications Corp. v. Illinois Bell Tel. Co.,* 222 F.3d 323, 338 (7th Cir.2000). Further, the appearance of a state in federal court to raise defenses is not necessarily a waiver of its 11th Amendment immunity. *Estate of Ritter v. University of Michigan,* 851 F.2d 846, 852 (6th Cir.1988). Since the § 365 proceeding here was not itself a suit against the State, the State clearly could have appeared here to raise any issue with regard to the § 365(f) requirements without consenting to be sued over breach of lease issues.

As the court in *NVR* stated, the states must choose whether or not to contest exercise of bankruptcy court authority over a debtor's property. Congress has the power to force this choice upon the states, and exercise of that power does not offend the 11th Amendment. *Platter,* 140 F.3d at 680; *Antonelli,* 123 F.3d at 787.

Finally, unlike the facts in *NVR,* the contested order did not require any expenditure from the state treasury. The order entered here merely leaves the State

where it was prior to bankruptcy, with a long-term lease on the property subject to any defenses should an action be filed against it in its courts.[1] The order simply allowed Debtor to transfer its interests in the lease to Bank One. Thus, for the foregoing reasons, the State's attempt to shoehorn this case into the analytical framework of *NVR* must be rejected.

## CONCLUSION

The State of Illinois in this case really is asserting a power to prevent the efficient administration of a Debtor's case by barring the sale and distribution of a debtor's assets that include a lease with the State. It's tactical purpose is apparent: to prevent a bankruptcy court from allowing any assignment by a debtor of a state lease (since it says federal courts cannot do so and it is clear that state courts lack authority to administer § 365) so that its state agencies may abandon their leases at will without recourse in any court. However, such blocking power is beyond state authority.

The State's objection to the assumption and assignment of its lease to Bank One is denied. It failed to show that it is entitled to relief, either under 11 U.S.C. § 365(d)(2) or the Eleventh Amendment of the Constitution. Thus, approval of the assumption and assignment as part of the order authorizing sale of Debtor's property was appropriately entered over the State's objection.

---

1. DCFS argued here that under agreements with Debtor, its leasehold obligations terminated. *See* Supplemental DCFS Memorandum and Exhibits filed December 27, 2002. But the issues thereby raised therein are examples of defenses that might be asserted should the assignee bring an action against DCFS in the Illinois Court of Claims, not issues which this court can decide, because that does require a suit against the State.