In re ARTRA GROUP, INC., Debtor.

Official Committee of Unsecured Creditors of Artra Group, Inc., Plaintiff,

v.

Artra Group, Inc. and Entrade, Inc., Defendants.

Bankruptcy No. 02 B 21522.
Adversary No. 02–1086.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 18, 2003.

Frances Gecker, Neal, Gerber & Eisenberg LLP, Chicago, IL, for Plaintiff.

James A. Chatz, Arnstein & Lehr, Chicago, IL, for Defendant Artra Group, Inc.

Bryan I. Schwartz, Boehm & Pearlstein, Ltd., Chicago, IL, Philip E. Ruben, Levenfeld & Pearlstein, Northfield, IL, for Defendant Entrade, Inc.

## MEMORANDUM OPINION

PAMELA S. HOLLIS, Bankruptcy Judge.

This matter comes before the court on the Motion of the Official Committee of Unsecured Creditors of Artra Group, Inc. For Approval of Amended Settlement Agreement and Clarification of Derivative Claims. The Committee wants the court to approve a settlement agreement resolving a pending adversary proceeding. Integrated into the settlement agreement is a permanent injunction barring the pursuit of claims against the non-debtors who have settled with the Committee, if those claims are based upon or derivative of injuries to Artra or the estate. The Committee also requests the court to declare that an adversary proceeding filed by Muralo Company, Inc. in Muralo's own bankruptcy case in New Jersey raises derivative claims and is therefore subject to the injunction. For the reasons stated below, the court lacks jurisdiction to determine if Muralo's claims are derivative of claims owned by Artra, grants in part the motion to approve the settlement agreement and permanent injunction, but denies the motion to the extent it inserts language in the release and the permanent injunction that affects Muralo's rights.

### BACKGROUND

The background to this motion was set forth in the court's September 30, 2003 opinion, but a brief repetition is appropriate.

In September 1999, Artra became a wholly-owned subsidiary of Entrade. In October 1999, Entrade obligated itself under $14,000,000 in long term promissory notes, although it was never able to meet its obligations under those notes. As a result, Artra made numerous loans to Entrade. The Committee alleges that these loans were funded, at least in part, by the proceeds of settlements between Artra and its insurance companies.

As of December 31, 2000, Artra was a defendant in pending lawsuits involving over 46,000 plaintiffs asserting claims related to products allegedly containing asbestos. In the settlements described above Artra released the insurance companies from all further obligations and the insurance companies paid money to Artra with the condition that the monies be used by Artra solely for the defense and payment of asbestos-related claims. On August 14, 2002, the Committee filed a one-count adversary proceeding against Artra and Entrade, requesting substantive consolidation of the two entities.

On July 2, 2003, the Committee filed a motion to approve a settlement agreement that would result in the dismissal of that adversary proceeding. Muralo objected to the motion, and in the September 30, 2003 opinion, the court denied the requested relief. The Committee then filed this motion to approve amended settlement agreement on October 24, 2003.

Muralo objects to this amended settlement agreement as well. In 1981, Artra sold paint products, materials, inventory and assets to Muralo. The Asset Purchase Agreement provided that Artra would indemnify and hold Muralo harmless from product liability claims. Eventually Muralo also became the target of numerous asbestos related lawsuits. Consequently, it filed its own Chapter 11 case in New Jersey on May 20, 2003. Shortly thereafter, Muralo filed an adversary proceeding against Entrade and some of its insiders alleging in part that the defendants fraudulently induced Muralo to release its indemnification claims against certain Artra insurers.

## CONTENTIONS OF THE PARTIES

The Committee seeks approval of the amended settlement agreement that it reached with Entrade and certain insiders. Integral to the settlement agreement is entry of a permanent injunction barring the pursuit of claims against Entrade or those insiders if such claims are based upon or derivative of injuries to Artra. The Committee asserts that it has revised the language and narrowed the scope of the injunction to conform with the concerns raised by the court in its September 30, 2003 opinion. It also asks the court to find that the claims Muralo raised in its New Jersey adversary proceeding are derivative of the estate's claims sought to be settled in this case and therefore subject to the proposed injunction.

Muralo contends that this court has no jurisdiction to determine whether the causes of action it is pursuing in the adversary proceeding in New Jersey are derivative and can be enjoined under this settlement agreement. Additionally, Muralo asserts that the Committee has not followed the procedure set forth in Federal Rule of Bankruptcy Procedure 7001(7), which requires the commencement of an adversary proceeding before entry of an injunction.

## DISCUSSION

**The Financial Terms of the Settlement Agreement and the Release Contained Therein Are Approved, Except That Certain Language Pertaining to the Characterization of Muralo's Claims is Stricken**

As the court previously stated in its September 30 opinion, "[t]he bench-

mark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate." *Matter of Energy Coop., Inc.,* 886 F.2d 921, 927 (7th Cir.1989). The value of the proposed settlement must be "reasonably equivalent" to the value of the surrendered claim and need only surpass "the lowest point in the range of reasonableness." *Id.* at 929 (citations omitted).

■ The court reviewed the financial terms of the settlement in the September 30 opinion and determined that it appeared that the dollar value of this settlement is at least above the lowest point in the range of reasonableness. *Newman v. Stein,* 464 F.2d 689, 698 (2nd Cir.1972), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). The court also determined that the release appears to be appropriate. With one exception, the court will not disturb those findings. The language of the release has changed slightly, as shown below in italics:

> each of the ARTRA Entities, the Committee *(and any and all claimants whose claims are derivative of the Committee related to the Committee Action, including without limitation, the Muralo Company, Inc.)* and the Future Claimants Representative hereby fully, finally and completely release and discharge Entrade and each of the Entrade Released Parties ...

For reasons that will become clear shortly, the court will strike that portion of the new language that is underlined above.

**The Court Has No Jurisdiction to Determine Whether The Claims Muralo Has Raised in the Adversary Proceeding Pending in New Jersey Are Derivative of the Claims Related to the Committee Action**

Muralo filed an adversary proceeding in its bankruptcy case in New Jersey, naming Entrade, John Conroy, Peter Harvey, John Harvey, and unknown parties as defendants. The complaint contains 11 counts alleging fraud, conspiracy to commit fraud, negligent misrepresentation, tortious interference with contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, constructive trust and fraudulent transfer. In the factual background of the complaint, Muralo alleges that it is a creditor of Artra through the operation of an indemnification agreement. Furthermore, it alleges that one of the defendants made false representations when obtaining a release of Muralo's claims against Artra insurer U.S. Fire Insurance.

Causes of action are property of a bankruptcy estate. *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Since Muralo commenced its own bankruptcy case and filed an adversary proceeding in the New Jersey court, this court cannot simply make a finding that the claims Muralo raises are derivative of claims owned by this debtor. Nor will the court approve language in the settlement agreement that states, without explanation, that Muralo's claims are derivative.

The question of what is property of Muralo's estate is properly answered only by the court before which Muralo's bankruptcy case is pending since the New Jersey court has exclusive jurisdiction over Muralo's assets. "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e). *See Williams v. Sears, Roebuck & Co. (In re Williams),* 244 B.R. 858, 866 (S.D.Ga.2000) (granting in part a motion to dismiss an action on behalf of a nationwide class of debtors

because "§ 1334(e) precludes the Court from exercising jurisdiction over those claims unless the individual bankruptcy cases commenced in this district"); *In re Sae Young Westmont–Chicago, L.L.C.,* 276 B.R. 888, 896 (Bankr.N.D.Ill.2002).

The Committee cited three decisions from the Seventh Circuit Court of Appeals suggesting there may be power to enjoin creditors from pursuing claims against non-debtors when the claims are owned by the debtor or derivative of the debtor's cause of action. *Fogel v. Zell,* 221 F.3d 955 (7th Cir.2000); *Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159 (7th Cir.1994); *In re L & S Industries, Inc.,* 989 F.2d 929 (7th Cir.1993). However, none of these decisions involved enjoining a creditor who was also in bankruptcy. As a result, the Seventh Circuit did not have to confront the problem before this court. Muralo's bankruptcy vests exclusive jurisdiction in the New Jersey bankruptcy court. Accordingly, this court has no jurisdiction to declare that the claims asserted in Muralo's adversary are foreclosed by the settlement in this case.

**The Court Will Issue the Permanent Injunction Pursuant to the Adversary Proceeding Filed in This Case**

Finally, the court turns to the question of whether it should issue the permanent injunction that is integrated into the amended settlement agreement. The language of the permanent injunction is attached to the agreement as Exhibit A, and provides in part that:

> All entities which have held or asserted, which hold or assert, or which may in the future hold or assert any Claims or Asbestos Personal Injury Claims against Entrade or the Entrade Released Parties ... based upon, relating to, arising out of, or in any way connected with asserting any Claims or Asbestos Personal Injury Claims (including pursuit of

such Claims which are derivative of the Committee Action such as the claim of Muralo Company, Inc.) shall be permanently enjoined, stayed, and/or restrained, from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claims or Asbestos Personal Injury Claims against the Covered Parties from the date of this order until the Bankruptcy Case is resolved by confirmation of a Plan of Reorganization, which includes a Channeling Injunction in favor of Entrade and the Entrade Released Parties or otherwise, as this court enters a final order under Section 349 of the Bankruptcy Code enforcing this Order.

This language has been significantly narrowed from that proposed in the initial settlement motion. The original permanent injunction sought to bar all entities from pursuing "any claim, demand, or cause of action ... including, but not limited to, all claims in the nature of or sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty ...". Now "Claim" is a term in the settlement agreement defined as any cause of action that is "in any way touching, concerning, arising out of or founded upon the allegations set forth in the Committee Action or claims which are derivative of such action." Moreover, it is no longer "any person" who might bring a Claim, but "either ARTRA, the Committee, the Future Claimants Representative or creditors who claims or injuries that were or may be suffered are based upon or derivative of injuries to ARTRA (including but not limited to those of Muralo Company, Inc.)" or their successors. While the language specifically including Muralo cannot be approved for the reasons stated earlier, the Committee has commendably narrowed the scope of the

claims barred by the injunction and the entities that would be bound by it.

In fact, the agreement explicitly states in section 3(f) that "[t]he parties acknowledge that nothing in the Permanent Injunction shall serve to preclude any claims by non-parties to this Agreement that are not derivative of (i) the Committee Action or (ii) any claims brought or able to be brought [exclusively] by the Committee or ARTRA." (The Committee orally agreed at the November 4, 2003 hearing on this motion that it would add the word "exclusively.")

However, Muralo asserts that a procedural issue bars entry of this injunction. Fed. R. Bankr.P. 7001 states that certain litigated matters are adversary proceedings. These include proceedings to recover money or property, to determine the validity, priority or extent of a lien, or to revoke a discharge. Specifically, Fed. R. Bankr.P. 7001(7) states that one such litigated matter is "a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief."

The Committee argued in its supplemental memorandum in support of the original settlement motion that if parties seek to settle an adversary proceeding, a motion requesting injunctive relief need only be filed in that proceeding in order to ensure that all parties to that action receive notice. In support of this argument, the Committee suggested that *Fogel v. Zell* provides insight on this issue. In *Fogel*, the bankruptcy trustee entered into a settlement agreement containing a permanent injunction against all creditors, barring them from pursuing causes of action against the settling defendants. The Committee stated that "neither the District Court, the Seventh Circuit nor any of the parties to that proceeding took issue with the trustee's decision to file the settlement

motion and seek the injunction in the underlying adversary proceeding."

It is true that the Seventh Circuit did not directly address the issue, perhaps because it held that approving the settlement in the first place was an abuse of the district court's discretion. However, the district court did explicitly approve entry of the injunction without initiation of a new adversary proceeding. In her opinion, District Judge Ann Claire Williams wrote:

> Denver also contends that the trustee should have filed and served an adversary proceeding against Denver as required by Bankruptcy Rule 7001(7). According to Denver, without taking these steps, the injunction will violate the due process clause of the Constitution.
>
> .... Contrary to Denver's position, there is no requirement that parties settling a pending adversary proceeding must initiate another adversary proceeding to have the settlement confirmed. Denver has cited no authority to support this argument and the court is unaware of any such rule.

*Fogel v. Zell*, 1999 WL 160265, \*10–11 (N.D.Ill. March 10, 1999).

The Committee contends that "[w]here a party seeks the entry of an injunction as part of the settlement of an existing adversary proceeding, Rule 7001 logically only requires that the motion requesting the injunction be filed in the adversary proceeding in order to ensure that all parties to that action receive notice." In *Fogel v. Zell*, the Seventh Circuit stated that "[t]he vice of the present injunction is not that it was entered against a nonparty but that it was premised on an invalid settlement." 221 F.3d 955, 966. The *Fogel* panel further noted in *dicta* that "though we cannot find a case on point, we think it a sensible extension of cases like *Zerand–Bernal Group, Inc. v. Cox, supra*, that as a party

to the bankruptcy proceeding Denver could be enjoined from prosecuting in any other forum the claim that it had filed in that proceeding." *Id. See also* 10 Collier on Bankruptcy ¶ 7065.01 (15th ed. rev'd 2000) (Rule 7001(7) "does not mean ... that a party seeking injunctive relief within an adversary proceeding ... must bring a separate adversary proceeding"). Under the facts of this case the filing of adversary proceeding 02 A 01086 satisfies the requirement of Fed. R. Bankr.P. 7001, even though the parties to the adversary proceeding do not include all the settling parties.

It is not problematic that the parties to the adversary proceeding do not include all the settling parties because the permanent injunction sought in this settlement only restricts the prosecution of claims derivative of those owned exclusively by the Committee or Artra. As a result, it is appropriate to bind not only the settling parties, including the Committee, but also those creditors who are in privity with the Committee.

Parties in privity with the Committee would be bound by this settlement in any event because "non-party interests [that are] adequately represented in a prior proceeding can be subject to *res judicata.*" *L & S Industries*, 989 F.2d at 934 (finding that the trustee of à principal's bankruptcy estate did not have identical interests to a guarantor). The lower court decision in *L & S Industries* stated that, " '[a]dequate representation means that the party to the first suit is so aligned with the non-party's interests as to be his virtual representative.' The parties must have more than parallel interests. The party in the first suit must be accountable to the non-party who seeks to raise the issue in the subsequent suit." *Williams v. Stefan*, 133 B.R. 119, 122 (N.D.Ill.1991) (citations omitted).

■ An official committee of unsecured creditors is a paradigm example of a party that is accountable to another. This Committee owes a fiduciary duty to the class of unsecured creditors as a whole. 7 *Collier on Bankruptcy* ¶ 1103.05[2] (15th ed. rev'd 2002). Although a committee's interests may not align in all situations with those of the creditors it represents, the committee acts as the representative of the creditors for those claims owned exclusively by the committee. Such claims are the only claims that will be barred by this injunction.

Finally, although proponents of the settlement in this case claim that the permanent injunction is critical to the settlement, the injunction is actually redundant in light of the release the court previously approved. The release provides that each of the ARTRA Entities, the Committee, any claimants whose claims are derivative of the Committee Action, and the Future Claimants Representative release Entrade and the Entrade Released Parties from Claims and Asbestos Personal Injury Claims as defined in the settlement agreement. If one of those entities[1] files an action naming Entrade or the Released Parties as a defendant and alleges a Claim or Asbestos Personal Injury Claim as grounds for relief, the defendant need only raise the defense of *res judicata* or claim preclusion since those claims were owned and settled in this case by the representative of the creditors.

## CONCLUSION

Since the New Jersey court has jurisdiction over the property of Muralo's bank-

---

1. This would include parties who essentially were in privity with a representative of the estate, i.e., the Creditor's Committee.

ruptcy estate, the court denies the request that it find Muralo's claims to be derivative of claims owned by Artra. The financial terms and the release, with the exception of certain language, are within the range of reasonable litigation possibilities, therefore the court grants in part the motion to approve the settlement agreement. Finally, the permanent injunction is approved subject to the removal of language specific to Muralo.